DECISION AND JUDGMENT ENTRY
{¶ 1} Plaintiff-appellant, Sandra Huth, appeals the April 28, 2005 judgment of the Lucas County Court of Common Pleas, which granted summary judgment in favor of defendant-appellee, Shinner's Meats, Inc. Because we agree that no genuine issues of fact remain for trial, we affirm the court's judgment.
{¶ 2} On January 9, 2004, appellant, a former meat clerk at one of appellee's Toledo locations, commenced the instant action alleging: wrongful discharge in violation of R.C.4123.90;[1] wrongful discharge in violation of public policy; negligence; unsafe workplace; and negligent hiring, supervision, and retention. In sum, appellant alleged that appellee terminated her employment in retaliation for her filing of a workers' compensation claim due to a shoulder injury allegedly caused by a fellow employee.
{¶ 3} On March 23, 2004, appellee filed a motion to dismiss Counts 2, 3, 4, and 5 of appellant's complaint pursuant to Civ.R. 12(B)(6). On September 23, 2004, the trial court granted appellee's motion in part, dismissing Counts 3, 4, and 5; the court denied appellee's motion as to Count 2, finding that the claim alleged a clear public policy violation.
{¶ 4} On January 11, 2005, appellee filed its motion for summary judgment. Appellee argued that appellant was not terminated in retaliation of her workers' compensation claim; rather, she was fired based on the deficiencies in her performance which culminated in an incident where appellant was insubordinate to a supervisor and swore in front of customers.
{¶ 5} In her memorandum in opposition, appellant argued that when Erin Darah, appellee's human resources manager, became aware of the workers' compensation claim she called appellant very upset and told her that her claim would be denied because the injury occurred at her prior employment. Darah also stated that appellant would have to complete an injury report and be drug tested. Further, according to appellant, appellant's supervisor, Valerie Gill, did not believe that appellant had been injured. Appellant further argued that after she filed the workers' compensation claim her hours were reduced and that she was terminated only one month after filing the claim.
{¶ 6} In its reply, appellee, inter alia, disputed appellant's characterization of her telephone call with Darah. Appellee claimed that during appellant's prior deposition, she failed to mention that Darah was upset during the telephone conversation or that Darah indicated that appellant's injury was from her prior employment. Appellee reiterated that it terminated appellant due to performance deficiencies.
{¶ 7} On April 27, 2005, oral arguments were held on the summary judgment motion. At the conclusion of the arguments, the trial court, looking at appellant's work performance and the work environment before-and-after she filed a workers' compensation claim, noted that there was a pattern of conduct from the beginning of her evaluations through to the end. The court stated that the September 2003 incident, where appellant swore at her supervisor in front of customers was, alone, a sufficient basis for her termination. The court stated that the only evidence to suggest that appellant was terminated in retaliation for filing a workers' compensation claim was Erin Darah's statement that appellant, per documented company policy, would have to take a drug and alcohol test prior to the company paying her claim. The court noted that there were no comments or other evidence whatsoever that the discharge resulted from her filing the claim. Finally, the court concluded that because appellant's claim of retaliatory discharge in violation of R.C. 4123.90 lacked merit, appellant's public policy claim must also fail.
{¶ 8} On April 28, 2005, the trial court's April 27, 2005 judgment was journalized in a written judgment entry; this appeal followed. Appellant now raises the following two assignments of error:
{¶ 9} "First Assignment of Error:
{¶ 10} "The trial court erred by granting defendant/appellee's motion for summary judgment on plaintiff/appellant's claim of workers' compensation retaliation under Ohio Revised Code ("O.R.C.") § 4123.90.
{¶ 11} "Second Assignment of Error:
{¶ 12} "The trial court erred by granting defendant/appellee's motion for summary judgment on plaintiff/appellant's claim of violation of Ohio public policy."
{¶ 13} We first note that appellate review of a trial court's grant of summary judgment is de novo. Grafton v. Ohio EdisonCo., 77 Ohio St.3d 102, 105, 1996-Ohio-336. Accordingly, we review the trial court's grant of summary judgment independently and without deference to the trial court's determination. Brownv. Scioto Cty. Bd. Of Commrs. (1993), 87 Ohio App.3d 704, 711. Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C). The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. Dresher v. Burt,75 Ohio St.3d 280, 294, 1996-Ohio-107. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E).
{¶ 14} In appellant's first assignment of error, she argues that a genuine issue of material fact exists as to whether appellant can establish that she was terminated in contravention of R.C. 4123.90. Particularly, appellant contends that after filing her workers' compensation claim she was subjected to punitive action and hostile attitudes from her supervisors and that she was terminated only one month after filing her claim. Appellee argues that appellant failed to establish a prima facie case of retaliatory discharge and that, even assuming she had presented a prima facie case, legitimate non-retaliatory reasons existed to terminate appellant's employment.
{¶ 15} R.C. 4123.90 provides, in relevant part:
{¶ 16} "No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer."
{¶ 17} In order to establish a prima facie retaliatory discharge claim, the employee must prove that: (1) the employee suffered an occupational injury; (2) the employee filed a workers' compensation claim; and (3) the employee was subsequently demoted or discharged from her employment in retaliation for the filing of the claim for benefits. Stites v.Napoleon Spring Works, Inc. (Nov. 15, 1996), 6th Dist. No. F-96-002, citing Wilson v. Riverside Hosp. (1985),18 Ohio St.3d 8. "If the employer moves for summary judgment and presents a legitimate nondiscriminatory reason for discharging an employee, the employee must provide credible evidence that such discharge was in retaliation for pursuing benefits under the Workers' Compensation Act." (Citations omitted.) Id. In Hohn v.Deco Tools, Inc. (Jan. 23, 1987), 6th Dist. No. L-86-119, this court applied the "before and after picture" evidentiary test in assessing retaliatory behavior. Hohn noted that the "[f]actors to be taken into consideration include such punitive action as bad performance reports surfacing immediately after a workers' compensation claim was filed, the length of time between the filing of a claim and discharge, changes in salary level, hostile attitudes emerging, and whether legitimate reasons existed for the discharge." Id.
{¶ 18} For summary judgment purposes, the parties do not dispute that appellant was injured during the course and scope of her employment and that she filed a workers' compensation claim relating thereto. Appellant first contends that she was subjected to punitive action following her August 25, 2003 workers' compensation claim in that appellant was not disciplined by appellee until after she filed the claim. Appellee argues that deficiencies in appellant's performance were documented months before appellant filed her workers' compensation claim and that the event that immediately caused her termination occurred just two days after she was warned to improve in certain areas or face termination.
{¶ 19} Following her August 2001 hire date, appellant received quarterly evaluations which were completed by her supervisor, Valerie Gill. In general, the evaluations, which were attached as exhibits to appellant's deposition, were good and noted that appellant was often first in sales on a weekly basis. Beginning with her July 2002 evaluation, Gill noted that appellant needed to talk less and worry only about things that concerned appellant. Appellant's July 17, 2003 evaluation, the final one before her termination, stated that appellant's customer awareness had become poor and that she should refrain from sharing her personal life with the customers. The evaluation also warned appellant against complaining to her co-workers; they were aggravated by it.
{¶ 20} On September 25, 2003, after receiving complaints that appellant was accusing co-workers of taking her hours, Gill warned appellant that she would be terminated if the following three concerns were not corrected: (1) stop getting involved in other people's personal and professional business; (2) stop talking to co-workers and distracting them from their work; and (3) drop side work and wait on customers. Thereafter, on September 27, 2003, a meeting was held after an apparent violation of one of the conditions. Appellant was asked to punch out and leave for the day. As she was leaving, she used profanity in front of customers. Following this incident, appellant was terminated.
{¶ 21} After review of the depositions and attached exhibits, we do not believe that the September 25, 2003 discipline and subsequent termination were punitive actions taken in response to appellant's workers' compensation claim. The issues that were addressed at the September 25, 2003 meeting were those that had been raised in several evaluations that were all conducted prior to appellant's August 25, 2003 workers' compensation claim.
{¶ 22} Appellant further argues that she was subjected to punitive action in that in September 2003, her hours were reduced from 72 hours bi-weekly to 65 hours bi-weekly. Appellant states that the hours reduction also resulted in a reduced bonus payment. Other than appellant's contention, there is no evidence that she, in fact, regularly worked 72 hours bi-weekly; further, appellee stated that after Labor Day, employees' hours were frequently reduced due to slower business. Appellee did state that the hours of the employees that opened the store remained constant; appellant did not open the store, she came in later in the morning.
{¶ 23} Regarding hostile attitudes, appellant contends that Gill and Darah "screamed and cussed at Huth" after they learned of the workers' compensation claim and that they required her to take a drug and alcohol test despite the fact that the injury occurred more than a month prior. Appellant claims that both Gill and Huth expressed a belief that appellant would fail the drug test. Finally, appellant states that Darah told her that the claim would not be allowed because it was from a prior employment and that Brandon Gates, the individual who allegedly caused the injury, merely bumped into her.
{¶ 24} In support of her "hostile attitudes" argument, appellant relies on Rauhuff v. American Fan Co. (June 21, 1999), 12th Dist. No. CA98-09-188. In Rauhuff, the appellate court found that the employee established a prima facie R.C.4123.90 retaliation claim where the employer stated that the employee was trying to cheat him by filing a claim for injuries not related to work. The court then found that a question of fact remained regarding whether the employer could establish that the employee's termination due to absenteeism was legitimate because the absenteeism policies were unclear. Id.
{¶ 25} We first note that the alleged statements by Darah were not raised by appellant until her February 1, 2005 affidavit attached to her memorandum opposing summary judgment filed on the same date. In the affidavit, appellant stated that during a telephone conversation between her and Darah, "Darah's voice was raised and loud and she told me that my claim would not be allowed because it was related to an injury from my previous employer." However, during her October 28, 2004 deposition, when asked, appellant stated:
{¶ 26} "Q: Is the sole basis for your claim that your termination was because of your Workers' Compensation claim, is the sole basis for that the reaction that Ms. Gill gave you and continued to give you about being mad of [sic] filing it?
{¶ 27} "A: Yes.
{¶ 28} "Q: Did she ever really say that you shouldn't have filed the claim?
{¶ 29} "A: I don't remember."
{¶ 30} In Erin Darah's deposition, she testified that she did not learn of appellant's injury until she received notice of the claim from the Bureau of Workers' Compensation. At that time, she telephoned appellant and informed her that she would have to complete an injury report and take a drug test as this was written company policy. Darah indicated that the policy applied despite the fact that the injury occurred a month prior. Regarding her conversation with appellant, Darah testified that the conversation was civil and that Darah did not raise her voice.
{¶ 31} Construing the evidence in appellant's favor, we believe that any negative reactions by Gill and Darah stemmed from the fact that appellant failed to follow company policy and procedure in pursuing her workers' compensation claim. Unlike Rauhuff,
there was no evidence presented that appellant was urged not to file her claim or, more fitting under the facts of this case, there was no evidence that appellant was told not to pursue her claim.
{¶ 32} Finally, appellant argues that the fact that she was discharged only one month after filing the workers' compensation claim demonstrates that her termination was retaliatory. In support, appellant cites Stites, supra, where this court noted that the employee's discharge was only a few months following the filing of her workers' compensation claim. In Stites, our ultimate determination that a genuine issue remained regarding the reason for the employee's termination was the fact that the stated reason for her termination was absenteeism and that the employer's attendance policy exempted absences for occupational injuries. While we agree that the length of time between the claim and termination is a factor in this case, it is only one factor of several that are considered while examining the before and after picture. Hohn, supra.
{¶ 33} Based on the foregoing, we must conclude that appellant has failed to establish a prima facie care of retaliatory discharge in violation of R.C. 4123.90. Further, even assuming that appellant had, in fact, established a prima facie case, appellee has provided a legitimate non-retaliatory reason for appellant's discharge. Appellee had continued concerns regarding appellant's inability to limit the discussion of personal matters with customers and co-workers; appellee also warned appellant to stop trying to "fix" her co-workers and to focus on her own job performance. On September 25, 2003, these concerns culminated in a meeting with appellant where she was warned that if the three problem areas were not immediately corrected she would be terminated. Just two days later, another incident occurred and, after being asked to leave for the day, appellant was insubordinate to her supervisor and cursed in front of customers.
{¶ 34} Accordingly, we find that appellant failed to create a genuine issue of fact regarding her claim for retaliatory discharge in violation of R.C. 4123.90. Appellant's first assignment of error is not well-taken.
{¶ 35} In her second assignment of error, appellant argues that the trial court erred in granting appellee's motion for summary judgment as to appellant's claim for violation of public policy. Several Ohio courts, including the Sixth Appellate District, have recognized a public policy claim based upon retaliation for filing a workers' compensation claim in conjunction with a claim under R.C. 4123.90. See Hutchison v. S.M.C. Aluminum Foundry,Inc. (Nov. 8, 1996), 6th Dist. No. WD-95-106.[2] The parties agree that in order to establish a public policy claim, appellant must demonstrate: (1) that a clear public policy existed and was manifested in a state or federal law or regulation or common law; (2) that dismissal of the employee under the circumstances would jeopardize the public policy; (3) that the employee's dismissal was motivated by conduct related to the public policy; and (4) that the employer lacked an overriding justification for the dismissal. (Citations omitted.) Kulch v.Structural Fibers, Inc. (1997), 78 Ohio St.3d 134, 151.
{¶ 36} In our disposition of appellant's first assignment of error we found that appellee had a legitimate non-retaliatory reason for appellant's discharge. Accordingly, the fourth element of the public policy claim has not been met. Additionally, we believe that the jeopardy element has not been met because appellee's discharge of appellant was lawful and not a pretext for retaliation. Accordingly, we find that appellant's second assignment of error is not well-taken.
{¶ 37} Based on the foregoing, we find that substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J. Singer, P.J. Skow, J. concur.
[1] As required by R.C. 4123.90, on October 17, 2003, appellant's counsel sent a notification letter to appellee.
[2] We acknowledge that the issue of whether Ohio law recognizes a public policy tort claim for wrongful discharge in violation of R.C. 4123.90 is currently pending in the Supreme Court of Ohio. See Sidenstricker v. Miller Pavement Maintenance,Inc., 104 Ohio St.3d 1459, 2005-Ohio-204.