DECISION AND JUDGMENT
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas which granted summary judgment to appellee, the Girl Scouts of Maumee Valley Council, Inc., on claims relating to appellant's termination from appellee's employment. Appellant's complaint set forth causes of action for age discrimination, disability discrimination, workers compensation retaliation, wrongful discharge in violation of public policy, negligent and intentional infliction of emotional distress, breach of implied contract and promissory estoppel. For the reasons set forth below, the judgment of the trial court is affirmed. *Page 2 
 {¶ 2} The following relevant evidence was before the trial court. Appellant was hired by appellee in 1994 to work as a naturalist at Camp Libbey in Defiance, Ohio. She was promoted to assistant camp manager in February 1998, and reported to camp manager Christine Gustin. Gustin's supervisor was Angela Tennaro, appellee's program director. Tennaro worked from appellee's headquarters in Toledo, Ohio, while appellant and Gustin worked at Camp Libbey.
 {¶ 3} In February 1998, appellee's written job description for assistant camp manager stated that the position was to "provide and conduct environmental and all council-sponsored programs that encourage a positive awareness and respect for wildlife and the natural environment" and assist with camp management functions. Duties included managing the budget and daily operations of the "environmental center," maintaining statistical records and preparing reports, and planning and implementing nature and environmental programs. The position required either a bachelor's degree or two to three years of related experience. Required skills included the ability to write reports and correspondence and the ability to "speak effectively before groups of customers or employees of organization [sic]." The section on "physical demands" stated that the employee must be able to "stand, walk, and talk or hear * * *, sit; use hands to finger, handle, feel; and reach with hands and arms[;] * * * climb or balance and stoop, kneel, crouch, or crawl [;] * * * lift and/or move up to 50 pounds and occasionally lift and/or move up to 100 pounds." *Page 3 
 {¶ 4} A February 1998 memo from the camp manager was introduced into evidence at appellant's deposition. The memo congratulated appellant on her new position as assistant camp manager and stated that the "only thing" different from her last position was having responsibility for running Camp Libbey in the camp manager's absence.
 {¶ 5} In October 2000, appellant completed a form titled "position content questionnaire," in which she was asked to list her job duties and state the amount of time she spent on each duty. Appellant estimated she spent two percent of her time fulfilling the camp manager duties in the manager's absence and five percent of her time assisting with the budget and daily operation of the environmental center. The weightiest percentages were assigned to managing program resources, supplies and equipment; evaluating program equipment and recommending purchase; and designing and implementing environmental education programs for Girl Scout troops, school curriculum groups, and community and adult groups. Appellant testified in her deposition that assumption of the camp manager responsibilities did not include payroll and that she was never privileged to see payroll information; however, she would compile time sheets for the employees and send them to headquarters in Toledo, where the payroll was completed.
 {¶ 6} In November 2000, appellant sustained an injury to her neck while playing with a group of girls at camp. Appellant filed a workers' compensation claim for the injury, which was granted, but she received no monetary benefits from the claim. *Page 4 
Instead, appellee continued to pay her salary while she was off work. Appellant had surgery in February and returned to work in April 2001. Appellant asserted that she still has difficulty with ordinary daily living tasks, such as washing her hair, and that coworkers had to assist her with lifting or moving heavy objects.
 {¶ 7} Appellant's documented performance reviews and evaluations were submitted into evidence. For the year 1998, appellant met or exceeded job requirements in nine areas. However, she "needed improvement" in the areas of communications, conflict resolution, judgment, delegation, and leadership. Specific recommendations included using a word processor to improve accuracy of written material and developing skills in using spreadsheets to manage the budget; various problem solving techniques were also suggested. For the year 1999, appellant met or exceeded job requirements in all areas except "conflict resolution." Gustin wrote that appellant "chooses to keep things bottled up" which contributed to an "atmosphere of tension." Gustin recommended "open communication" and less "procrastination" with personnel problems. For the year 2000, appellant met or exceeded all job requirements, and exceeded requirements in more areas than she had in 1999. Seven goals for appellant for that year were listed and appellant had met each goal. No areas were deemed needing improvement and Gustin summarized the evaluation by writing: "Jill has made great strides in many areas from last year. Jill has been an important part of the changes and forward momentum at camp. Jill has worked hard to obtain donations or funding for camp programs and is using her skills to positively benefit camp." Under "future goals," Gustin wrote that appellant needed to *Page 5 
"work towards understanding and managing" the budget in the camp manager's absence, and to create and present a fiscal spreadsheet for those areas over which she had budgetary authority. For the year 2003 (two years were skipped), Gustin found that appellant met or exceeded all performance requirements and had met all of her goals. In summary, Gustin wrote that appellant was "instrumental in increasing the number of participants * * * strives to offer quality programming and to meet [needs]." Computer skills (or appellant's lack of them) were not mentioned.
 {¶ 8} Appellant introduced into evidence four handwritten notes she had received from Tennaro during her employment, expressing thanks for appellant's "hard work," "time and dedication," and "long hours and commitment." The notes are undated, however. At Tennaro's deposition, she was asked about a November 2005 note in which Tennaro wrote: "It seems that every year you are challenged and you always rise to the occasion * * * you took it all on with open arms." Tennaro testified that, in fact, she was not happy with appellant's performance and it was appellant who caused the challenges.
 {¶ 9} According to Gustin and Tennaro, at some unspecified time between late 2004 and early 2005, appellant was demoted from assistant camp manager. Appellant's pay rate did not change. Tennaro was not sure of appellant's new job title, but guessed that it was changed back to program services manager; Gustin agreed. Gustin testified that the change meant that appellant was no longer responsible for the camp manager's duties in her absence and that appellant's "administrative" responsibilities were eliminated. Tennaro did not consider that appellant's job duties "effectively" changed *Page 6 
because appellant was not "doing the duties expected her at that time anyway." Tennaro could not remember telling appellant she was demoted, but asserted that appellant must have been verbally told of the change. Appellant testified to a different set of facts, asserting in her deposition that she was never told her job title had been changed or that any duties had been removed from her areas of responsibility.
 {¶ 10} On January 4, 2006, Gustin and Tennaro took appellant aside and told her she was terminated from employment. Appellant testified that they gave her no explanations beyond general statements about not keeping up with job expectations. Tennaro testified she recommended appellant's termination, explaining: "Jill was not a team player. Girl Scouts was making some significant changes, and we wanted to move forward. Jill was not interested in offering new programs to girls. * * * Jill was unwilling to assist in summer resident camp in positions that we needed her to. Jill was unwilling to assume responsibilities as the assistant camp manager in the absence of the camp manager, which meant that I was trying to run camp from 60 miles away, which was really not possible. The bottom line was Jill was not willing to be the leader that we needed her to be."
 {¶ 11} Gustin pointed to several other failings on appellant's part. She noted that appellant was unwilling to engage in public speaking events, had no computer skills, and failed to fulfill her budgeting and payroll responsibilities. She testified that these issues were discussed several times in staff meetings and that appellant consistently did not follow through on procedures and responsibilities. Appellant, in contrast, stated that she *Page 7 
had never been responsible for payroll, although she did compile time sheets and send them to headquarters in Toledo when needed. Both Gustin and Tennaro testified that they discussed these problems with appellant at monthly staff meetings and appellant failed to improve. When Gustin was asked if she discussed job performance with appellant in the few months before her termination, Gustin stated: "To say specifically is a difficult thing. We had several conversations about, you know, the direction we were going, what we expected in the center. I can't say that we specifically focused on one performance issue. * * * I don't recall. I can't recall. Everything was done verbally." Contrary to this, appellant stated in her affidavit that she never received any negative feedback.
 {¶ 12} After appellant's employment was terminated, Adam Cassi, age 24, was hired as outdoor program manager. Gustin testified that Cassi took on some budgeting responsibilities, although budgeting had not been specified in the job description as advertised.
 {¶ 13} The trial court granted appellee's motion for summary judgment on each of appellant's seven claims. Although it found appellant had established a prima facie case of discrimination on the basis of age, it held that appellant had not pointed to evidence rebutting the reasons appellee offered for her termination. As for appellant's disability discrimination claim, the trial court held that appellant did not prove she qualified as "disabled," nor did she offer evidence demonstrating that appellee considered her disabled. Summary judgment was also granted to appellee on each remaining claim. *Page 8 
 {¶ 14} Appellant timely appealed and sets forth the following assignments of error:
 {¶ 15} "Assignment of Error Number One: The trial court erred by permitting appellee to insert a contention and evidence in support of its contention for the first time in its reply memorandum that appellant failed to demonstrate that the reasons advanced to support her termination were pretextual when appellee failed to raise this issue in its motion and initial memorandum.
 {¶ 16} "Assignment of Error Number Two: The trial court erroneously engaged in improper fact finding in reaching its decision on summary judgment that appellant had failed to meet her burden of showing that the proffered reason for her termination was pretext on her age discrimination claim.
 {¶ 17} "Assignment of Error Number Three: The common pleas court erred in holding that appellant failed to prove a claim of workers compensation retaliation.
 {¶ 18} "Assignment of Error Number Four: The common pleas court erroneously found that appellant did not bring forth sufficient evidence of a disability under Ohio Revised Code section 4112.02(A) on her disability discrimination claim."
 {¶ 19} We note initially that an appellate court reviews a trial court's granting of summary judgment de novo, applying the same standard used by the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129; Graft on v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105, 1996-Ohio-336. Accordingly, summary judgment will be granted when there remains no genuine issue of material fact and, when *Page 9 
construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ. R. 56(C).
 {¶ 20} In her first assignment of error, appellant asserts that the trial court erroneously considered and relied upon facts and evidence improperly raised by appellee. Appellant argues that appellee presented arguments in its reply brief that had not been raised in its original motion for summary judgment and that, as a result, she was not allowed the opportunity to address the issue of pretext in response to appellee's motion.
 {¶ 21} Our review of the record reveals that appellee, in its motion for summary judgment, supported its position by citing at least seven reasons for terminating appellant's employment. In so doing, appellee referred to the deposition testimony of Tennaro and Gustin, two of appellant's supervisors. Appellee stated that appellant was terminated for not meeting legitimate job expectations — specifically, for not being a team player, for a lack of interest in offering new programs to campers, for being unwilling to assist in summer resident camp positions where help was needed, and for being unwilling to assume the responsibilities of the assistant camp manager in her absence. In her memorandum in opposition to summary judgment, appellant clearly responded to appellee's contention that she was not meeting job expectations by referring to favorable job evaluations and by stating that she had never received negative feedback prior to her termination. Appellant acknowledged her burden of raising a factual issue as to the "falsity of the employer's explanation." *Page 10 
 {¶ 22} Upon examination of appellee's reply brief, however, we see that appellee referenced the same deposition testimony — in fact, the same pages — it had discussed in support of its underlying motion. The issue of whether there was justification for appellant's termination was discussed in the reply brief, as it previously had been in support of appellee's underlying motion. Therefore, we cannot find that appellant was "ambushed" by appellee's arguments, as she claims.
 {¶ 23} At the time of filing its motion for summary judgment, appellee had only to show that appellant could not meet her burden of establishing age discrimination, which in turn imposed on appellant the burden of setting forth her four-part prima facie case. Wexler v.White's Fine Furniture, Inc. (C.A.6, 2003), 317 F.3d 564, 574. Appellant argues that it was unfair to allow appellee to raise reasons for her dismissal in its reply because she had no opportunity to respond. However, the record contains no evidence that appellant attempted to seek leave to file a further response. Appellant also claimed that the trial court erred by considering the reasons for her discharge as set forth in appellee's reply. In its reply, however, appellee was following the law as stated by the Sixth Circuit, which held that establishing a prima facie case, as the trial court found appellant had done, creates a presumption of discrimination, which then requires the defendant to articulate a legitimate, nondiscriminatory reason for the dismissal.Danielson v. City of Lorain (C.A.6, 1991), 938 F.2d 681, 683. Appellee articulated those reasons in its reply. *Page 11 
 {¶ 24} Accordingly, we find that appellant was not denied the opportunity to demonstrate a pretextual basis for her discharge, and appellant's first assignment of error is not well-taken.
 {¶ 25} Appellant's second assignment of error also arises from her claim of age discrimination. Appellant argues that the trial court engaged in improper fact finding when it determined that she ultimately failed to meet her burden of showing pretext. We find that the trial court did not engage in improper fact finding and that appellant failed to establish that a reasonable fact finder could have concluded that poor work performance was merely a pretext for dismissing her on the basis of her age.
 {¶ 26} To prove pretext, appellant was required to show that appellee's proffered legitimate reasons for the discharge from employment "had no basis in fact," "did not actually motivate" appellee's decision, or "were insufficient to motivate" the decision.Manzer v. Diamond Shamrock Chem. Co. (C.A.6, 1994), 29 F.3d 1078, 1084. Appellant was required to "indict the credibility of [her] employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant." Id.
 {¶ 27} Further, "if a plaintiff is not able to establish that she performed the job at a level which met the employer's legitimate expectations or that the accusation of poor work was only a pretext, the claim for discrimination cannot be successful." McDonald v. Union CampCorp. (C.A.6, 1990), 898 F.2d 1155, 1160. *Page 12 
 {¶ 28} Appellant attempted to demonstrate pretext by referring to positive job evaluations from 2003, although she was not discharged until 2006. She also cited holiday thank-you notes which the record reveals were sent not just to appellant but to all camp staff members. In contrast, as set forth above, appellee provided the trial court with the detailed testimony of two of appellant's supervisors, both of whom discussed numerous reasons for the termination.
 {¶ 29} We therefore conclude that appellant failed to establish that a reasonable fact finder could have found that poor work performance was merely a pretext for her dismissal and that age was a determinative factor. Accordingly, appellant's second assignment of error is not well-taken.
 {¶ 30} In her third assignment of error, appellant argues that the trial court improperly granted summary judgment on her claim that she was terminated in retaliation for filing a workers' compensation claim. This court has held that "[i]n order to establish a prima facie retaliatory discharge claim, the employee must prove that: (1) the employee suffered an occupational injury; (2) the employee filed a workers' compensation claim; and (3) the employee was subsequently demoted or discharged from her employment in retaliation for the filing of the claim for benefits." Huth v. Shinner's Meats, Inc., 6th Dist. No. L-05-1182, 2006-Ohio-860, ¶ 17, citing Wilson v. Riverside Hosp. (1985),18 Ohio St.3d 8. The employer may then present a legitimate, nondiscriminatory reason for the termination. Id. As with claims of age discrimination, the employee may then prove that the legitimate reason was a pretext and that she was fired for filing a workers' *Page 13 
compensation claim. Young v. Stelter Brinck, Ltd., 1st Dist. No. C-070259, 2007-Ohio-6510, ¶ 20-21.
 {¶ 31} The trial court properly found that appellant could not establish a prima facie case because she failed to demonstrate a causal connection between filing the claim and being terminated. Typical evidence supporting the existence of a causal connection includes "such punitive action as bad performance reports surfacing immediately after a workers' compensation claim was filed, the length of time between the filing of a claim and discharge, changes in salary level, hostile attitudes emerging, and whether legitimate reasons existed for the discharge." Huth, supra, ¶ 17, quoting Hohn v. Deco Tools, Inc. (Jan. 23, 1987), 6th Dist. No. L-86-119.
 {¶ 32} One isolated comment by appellant's supervisor, to the effect that appellant's claim was responsible for causing appellee's workers' compensation rates to increase, out of context and without other evidence, is insufficient to establish a causal connection to her termination. Other evidence supports the opposite conclusion. Appellant filed her workers' compensation claim in November 2000, and was terminated on January 4, 2006. The fact that appellant was not terminated until slightly more than five years after she filed her claim suggests that her firing was unrelated to having made the claim. See, e.g., Doss v. Hilltop Rental Co., 1st Dist. No. C-030129,2003-Ohio-5259. Additionally, appellant's salary level did not decrease, and she did not point to or describe "hostile attitudes." As discussed supra, her subsequent performance reviews were not negative. Since appellant cannot establish her prima facie case, summary *Page 14 
judgment for this claim was proper. Appellant's third assignment of error is therefore not well-taken.
 {¶ 33} In her fourth assignment of error, appellant argues that, contrary to the trial court's decision, she was "disabled" for purposes of her disability discrimination claim. "Disability" in employment law means "a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment." R.C. 4112.01(A)(13).
 {¶ 34} The burden-shifting framework for evaluating disability discrimination claims essentially mirrors the framework for claims of age discrimination and workers' compensation retaliation. Young v.Stelter Brinck, Ltd., 1st Dist. No. C-070259, 2007-Ohio-6510, ¶ 34. The trial court in this case held that appellant could not show that she was substantially limited in major life activities, and that appellant did not show that appellee regarded her as having a disability.
 {¶ 35} Evidence which appellant submitted in opposition to summary judgment demonstrates that her neck and arm problems did not substantially limit major life activities. In February, 2001, her physician wrote of an examination that appellant "no longer describes radicular arm pain and describes good improvement in strength." She was healing from the surgery very well and could move her shoulder with stiffness, but with no pain. In May 2001, the same physician examined appellant again and released *Page 15 
her from his care, writing that appellant "continues to have no difficulty with pain, numbness or weakness in the upper extremities. She is doing her usual activities without any difficulty."
 {¶ 36} Appellant testified in deposition and in her affidavit that she still treats with a chiropractor and that residual pain from the injury still impairs sleeping, sitting, dressing, bathing, and doing her hair. However, she also testified that she can still perform these activities with adjustments. The trial court found that working, also a major life activity, was not substantially affected as appellant claimed because she was not "significantly restricted" in her ability to work. In reaching this conclusion, the trial court cited House v. KirtlandCapital Partners, 158 Ohio App.3d 184, 2004-Ohio-3688. See, also,Columbus Civ. Serv. Comm. v. McGlone (1998), 82 Ohio St.3d 569, 573
(interpreting former R.C. 4112.01(13)). We agree that appellant was unable to raise a genuine issue of material fact as to whether she was "disabled" within the meaning of R.C. 4112.01(13).
 {¶ 37} Appellant also argued that appellee regarded her as being disabled, which allowed her to meet the statutory definition of "disabled." However, in order to avoid summary judgment on a "regarded as" claim, a plaintiff must show that her employer perceived her alleged disability as foreclosing her from a class of jobs, not simply one particular job. Columbus Civ. Serv. Comm. v. McGlone,82 Ohio St.3d at 574. We agree with the trial court that although Gustin and Tennaro were aware that appellant required assistance in lifting and stacking heavy materials, no evidence exists that this awareness *Page 16 
translated into a perception that appellant was disabled. Further, appellant has not demonstrated a connection between the awareness that she required assistance and her termination. Because appellant is unable to raise a genuine issue of fact as to this claim, her fourth assignment of error is not well-taken.
 {¶ 38} Because appellant has not argued on appeal that summary judgment was improper as to her claims of wrongful discharge in violation of public policy, negligent and intentional infliction of emotional distress, breach of implied contract, and promissory estoppel, we decline to address the trial court's decision on those claims.
 {¶ 39} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
William J. Skow, J., dissents and writes separately.