**YOUNG, Appellant,**

v.

**STELTER & BRINCK, LTD., Appellee.**

[Cite as *Young v. Stelter & Brinck, Ltd.,* 174 Ohio App.3d 221, 2007-Ohio-6510.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–070259.

Decided Dec. 7, 2007.

</div>

222

Lindhorst & Dreidame Co., L.P.A., and James M. Moore, for appellant.

Hemmer Pangburn DeFrank, P.L.L.C., and Scott R. Thomas, for appellee.

MARK P. PAINTER, Judge.

{¶ 1} In this employment-discrimination and retaliatory-discharge case, plaintiff-appellant, James Young, appeals the trial court's entry of summary judgment in favor of defendant-appellee, Stelter & Brinck, Ltd. We affirm.

## I. Employment and Injury

{¶ 2} Stelter is an international company that manufactures air heaters, afterburners, incinerators, and ·other thermal products. Due to a downturn in business, between September 2001 and September 2005, Stelter had reduced its full-time employee base from 44 to 26 people. In its appellate brief, Stelter states that between August 2005 and June 2007, it terminated three additional employees.

{¶ 3} Young worked for Stelter from 2001 through 2005. Stelter terminated Young's employment shortly after he had injured his back at work and filed a workers' compensation claim.

{¶ 4} Young had begun working for Stelter in 2001 as a service technician. For the next three years, Young's job evaluations were good. Young had received a bonus· and praise from customers, supervisors, and coworkers.

{¶ 5} After three years of employment, Young requested that he be reassigned to Stelter's on-site shop as a fabricator. Stelter granted his request, and Young began working as a fabricator in late 2004.

{¶ 6} According to Stelter, Young's performance deteriorated after he switched positions. In April 2005, Stelter decided to offer a fabricating position to another employee. Dale Witsken, Stelter's operations manager, e-mailed supervisors Jerry Sebald and Steve Price to ask them for feedback on Young's performance because he would "probably need to let [Young] go." Sebald's and Price's reply e-mails stated that Young had been irresponsible with tools that Stelter had issued to him, had taken too long to complete job reports, had not been reliable, had poor hygiene, and had demonstrated a lack of fabricating skills.

{¶ 7} Stelter did not terminate Young's employment immediately, but both Witsken and Sebald stated that Young's quality of work, attention to detail, time-

management skills, and attitude continued to deteriorate after April 2005. Stelter allowed Young to continue his employment for another four months.

{¶ 8} Two events happened shortly before Young injured his back. First, Stelter had requested that Young work on a Saturday. According to Stelter, Young told Sebald that he could not work, because of childcare issues. On that Saturday, another employee had been assigned to a job and was unable to complete it. He called Young and asked him to finish the job for him. Young claimed that he had been with his children, but then had found a babysitter and had called Sebald several times to explain the situation. Stelter claimed that Young had lied about having childcare issues and had been working for another employer that day.

{¶ 9} The second incident involved a company credit-card charge. The charge was for a hotel in New Jersey—the receipt stated "no show." Young was not in New Jersey on the date listed. Sebald produced a copy of an e-mail he had sent to Young inquiring about the charge. Young claimed that he had never received the e-mail and that there was no mention of the charge during a subsequent phone conversation or during the meeting at which he was terminated.

{¶ 10} On August 11, 2005, Young spent a day at work lifting 20–foot metal bars. His back began to hurt. Young reported to work the next day, but he left early because he was in severe pain and wanted to see a doctor. The doctor gave him pain pills and told him to return in a few days. At Young's next appointment, the doctor referred him to physical therapy. At some point, Young's doctor told him that he had sprained his back and might have a slipped disk or a sciatic-nerve problem.

{¶ 11} Young was unable to work between the day of the injury and August 29, the day his employment was terminated. Young said that he had called Sebald daily between August 13 and 17 to inform him of his condition.

{¶ 12} Sebald said that Young did not contact him between August 13 and 17. Sebald said that he had received an e-mail from Young on August 18, after he had speculated in front of Young's coworkers about whether Young was quitting. Young's e-mail described his doctor's diagnosis, informed Sebald that Young was in severe pain, and discussed the need to miss more work for physical therapy and recovery.

{¶ 13} On August 19 or 20, Young filed a workers' compensation claim. (It is not clear on which day the claim was filed.) On August 23, Sebald called Young and asked him to come in for a meeting the following Monday, August 29. Young's employment was terminated at that meeting. But Young said in his deposition that he was still on Stelter's schedule to perform jobs for customers well past August 2005.

{¶ 14} Young sued Stelter, alleging that it had violated R.C. 4123.90, by retaliating against an employee for instituting a workers' compensation claim, and R.C. 4112.02, by discriminating against an employee on the basis of a disability.

{¶ 15} Stelter denied that it had discharged Young as a result of his workers' compensation claim or that it had discriminated against Young on the basis of a disability. Stelter set forth a myriad of reasons why Young's work performance had been unsatisfactory despite a positive job evaluation in 2004. Stelter also pointed to its overall reduction in staff since 2001 and to e-mail exchanges discussing Young's termination well before he filed his workers' compensation claim.

{¶ 16} Young disputed all allegations that his performance was lacking. He pointed out that his last evaluation had been very good, that the company had never documented or approached him about any of the trouble areas Stelter had identified until after his termination, and that he was on Stelter's job schedule past his termination date.

{¶ 17} The trial court granted summary judgment to Stelter, and this appeal followed.

## II. Assignment and Standard

{¶ 18} In his sole assignment of error, Young argues that the trial court's entry of summary judgment for Stelter was improper because he had presented sufficient evidence to avoid summary judgment under either R.C. 4123.90 or 4112.02.

{¶ 19} We review a grant of summary judgment de novo.[1] Stelter was entitled to summary judgment only if (1) there was no genuine issue of material fact, (2) Stelter was entitled to judgment as a matter of law, and (3) reasonable minds, when viewing the evidence in favor of Young, could only reach a conclusion that was adverse to him.[2]

## III. Retaliatory Discharge: Prima Facie Case

{¶ 20} It is illegal in Ohio for an employer to discharge an employee for initiating or pursuing a workers' compensation claim.[3] Courts analyze retaliatory-discharge claims under a burden-shifting approach. The initial burden of

---

1. *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243.

2. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241.

3. R.C. 4123.90.

proof lies with the plaintiff to establish a prima facie case of retaliation.[4] The burden to establish a prima facie case in a retaliatory-discharge case is not onerous.[5] In this case, Young had to show that (1) he was injured on the job, (2) he filed a workers' compensation claim, and (3) there was a causal connection between his filing of the workers' compensation claim and his termination.[6]

{¶ 21} If Young could have established a prima facie case, the burden would have shifted to Stelter to set forth a legitimate nonretaliatory reason for Young's discharge.[7] If Stelter could articulate a nonretaliatory reason for Young's discharge, the burden would have shifted back to Young to prove that the reason articulated by Stelter was a pretext and that he was fired because he had pursued a workers' compensation claim.[8]

{¶ 22} At least for summary-judgment purposes, Stelter does not dispute that Young was injured on the job or that he had filed a workers' compensation claim. Thus, in analyzing the existence of a prima facie case, we focus on whether there was a causal connection between the protected activity and Young's termination.

{¶ 23} To establish a causal connection, Young was not required to present a "smoking gun."[9] He had to present sufficient evidence to create an inference that the employment decision was retaliatory, and he could have satisfied his burden through direct or indirect evidence.[10] Therefore, the trial court should have considered a variety of factors to determine whether there was an inference of a retaliatory motive.[11]

{¶ 24} Stelter fired Young days after he had filed a workers' compensation claim. However close, temporal proximity alone is insufficient to establish a prima facie case of retaliatory discharge.[12] But Young presented compelling circumstantial evidence that established a prima facie case.

---

4. *Cunningham v. Kroger Co.*, 1st Dist. No. C–050990, 2006-Ohio-5900, 2006 WL 3230323, ¶ 16.

5. *Greer–Burger v. Temesi*, 8th Dist. No. 87104, 2006-Ohio-3690, 2006 WL 2023571, ¶ 15.

6. *Wilson v. Riverside Hosp.* (1985), 18 Ohio St.3d 8, 18 OBR 6, 479 N.E.2d 275, paragraph one of the syllabus.

7. *Kilbarger v. Anchor Hocking Glass Co.* (1997), 120 Ohio App.3d 332, 338, 697 N.E.2d 1080.

8. Id. at 338, 697 N.E.2d 1080.

9. *Kent v. Chester Labs, Inc.* (2001), 144 Ohio App.3d 587, 592, 761 N.E.2d 60.

10. Id.

11. Id.

12. *Pflanz v. Cincinnati*, 149 Ohio App.3d 743, 2002-Ohio-5492, 778 N.E.2d 1073, ¶ 47.

{¶ 25} Young presented evidence that Stelter had always regarded him as a model employee. A written job evaluation that had been prepared only a year before Young's dismissal showered praise on him. In the evaluation, Sebald wrote, "Jim does a very good job and is very [conscientious] of his work * * * Attendance—never a problem. * * * Attitude—very good." Sebald concluded this August 2004 evaluation by stating that Young was a "very good employee," and that he was given a bonus for "going the extra mile." Previous job evaluations also had been generally positive, and Young had received accolades from customers.

{¶ 26} In addition to his positive job evaluations and the temporal proximity between his filing of the workers' compensation claim and his discharge, Young presented evidence that Stelter had scheduled Young to work well past the date that he was discharged, which suggested that before Young filed his claim, Stelter had intended to keep him on. Together, this evidence created an inference of a causal connection between Young's workers' compensation claim and his termination. Therefore, Young established a prima facie case of retaliatory discharge.

### IV. Retaliatory Discharge: Legitimate Nonretaliatory Reasons and Pretext

{¶ 27} Because Young was able to establish a prima facie case of retaliatory discharge, the burden shifted to Stelter to articulate legitimate, nonretaliatory reasons for discharging Young.[13] Stelter successfully carried its burden—it pointed to evidence that it had let go many other employees because of slow business, that Young's job performance after switching to a fabricator position was not up to Stelter's standards, that Young had an unexplained corporate credit-card charge, and that Young had skipped work to moonlight on another project.

{¶ 28} The burden then shifted to Young to show that Stelter's stated reasons for firing him were a pretext for retaliation. For most of the reasons offered by Stelter, Young offered explanations or denials:

{¶ 29} (1) Stelter claimed that tools that it had issued to Young were missing— Young denied that he had misplaced or stolen any tools, (2) Stelter complained about Young's slow work pace—Young countered that his evaluations did not reflect that he worked slower than others in the shop, and that no supervisor had ever approached him about it, (3) Stelter said that Young had inferior fabrication skills—Young claimed that no one had ever told him that his skills were inferior,

---

**13.** *Cunningham v. Kroger Co.*, 1st Dist. No. C–050990, 2006-Ohio-5900, 2006 WL 3230323, ¶ 15.

(4) Stelter said that other employees had complained about Young's bad attitude—Young noted that Stelter had described his attitude in his evaluation as "very good," and (5) Stelter claimed that Young was moonlighting when he was supposed to be working for Stelter—Young disputed Stelter's version of the event.

{¶ 30} Young disputed all of Stelter's allegations and stated that Stelter had never discussed any problems with him. But Stelter was not obligated to discuss poor job performance with Young before firing him. We must view the evidence in a light most favorable to Young. But even if we accept Young's version of events, we hold that Young failed to carry his burden of showing that Stelter's stated reasons for firing him were a pretext for retaliation.

{¶ 31} Even if Young objectively had been a stellar employee, summary judgment would have been proper. As evidenced by the e-mails exchanged four months before Young's injury, Stelter subjectively believed that Young's work performance was so lacking that he deserved to be discharged. Young did not show that Stelter's reasons for discharging him were manufactured to hide a more sinister reason for firing him.

{¶ 32} It is undisputed that Stelter planned to terminate Young in April 2005. The e-mails stated that Young's supervisors had considered him irresponsible with tools, slow, unreliable, unhygienic, and an inferior fabricator. These e-mails were sent four months before Young's injury. The e-mails established both that Stelter's dissatisfaction with Young's work performance had preceded his workers' compensation claim and that Stelter had planned to fire Young months before he injured his back. Thus, Young's discharge had nothing to do with the workers' compensation claim.

{¶ 33} Although Young's positive evaluations, the timing of his termination, and Stelter's employee job schedule were sufficient for a prima facie showing, they were not enough to show that Stelter's stated reasons for firing Young were a pretext for retaliation.

## V. Disability Discrimination

██ {¶ 34} The burden-shifting framework to prove disability discrimination is similar to the retaliatory-discharge framework. To establish a prima facie case of discrimination because of a disability, Young had to prove that (1) he had a disability, (2) he was terminated at least in part because of his disability, and (3) he could have substantially performed the essential functions of his job.[14] If Young could have established a prima facie case of discrimination, Stelter had to

---

14. *Columbus Civ. Serv. Comm. v. McGlone* (1998), 82 Ohio St.3d 569, 571, 697 N.E.2d 204.

offer nondiscriminatory reasons for his termination, and then Young would have had the burden of proving that those reasons were a pretext for discrimination.[15]

{¶ 35} Disability is defined by R.C. 4112.01(A)(13) as "a physical or mental impairment that substantially limits one or more major life activities, including * * * performing manual tasks, * * * and working; * * * or being regarded as having a physical or mental impairment."

{¶ 36} Young did not establish a prima facie case of discrimination based upon a disability. At his deposition in June 2006, Young testified that his back hurt periodically, mostly when he went to bed. Young's short-term impairment was not a disability under R.C. 4112.01(A)(13).[16]

{¶ 37} For the foregoing reasons, we hold that the trial court properly granted summary judgment to Stelter, and we affirm that judgment.

Judgment affirmed.

HENDON and DINKELACKER, JJ., concur.

---

15. *Hood v. Diamond Prods.* (1996), 74 Ohio St.3d 298, 302, 658 N.E.2d 738.

16. *Jurczak v. J & R Schugel Trucking Co.,* 10th Dist. No. 03AP–451, 2003-Ohio-7039, 2003 WL 22999504, ¶ 23; *Sadinsky v. EBCO Mfg. Co.* (1999), 134 Ohio App.3d 54, 60, 730 N.E.2d 395.