[Cite as *Rowe v. Hoist & Crane Serv. Group, Inc.*, 2022-Ohio-3130.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| JOSEPH ROWE, ET AL., | : | |
| Plaintiffs-Appellants, | : | |
| | | No. 110921 |
| v. | : | |
| HOIST & CRANE SERVICE GROUP INC., | : | |
| Defendant-Appellee. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 8, 2022

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-922748

### *Appearances:*

SPITZ, Brian D. Spitz, Daniel S. Dubow, and Rocco Screnci, *for appellants.*

Ritzler, Coughlin & Paglia, Ltd., Michael A. Paglia, and Colin P. Sammon, *for appellee.*

EMANUELLA D. GROVES, J.:

{¶ 1} Appellants Joseph Rowe ("Joseph") and Joshua Rowe ("Joshua"), (collectively "Appellants"), appeal the trial court's judgment granting appellee Hoist & Crane Services Group, Inc.'s ("HCSG"), motions for judgment on the pleadings and for summary judgment. For the reasons that follow, we affirm.

**Procedural History and Factual Background**

{¶ 2} HCSG provides service and maintenance for companies that use industrial cranes and hoists in their operations. Employees of HCSG travel to client sites, usually as two-person teams consisting of a lead technician and a technician assistant or apprentice. HCSG hired Joshua on February 5, 2018, as a service technician. Joshua had prior training and expertise in overhead door maintenance. So, he acted as a lead technician for that type of job. In other jobs, he acted as a technician assistant. On February 28, 2018, HCSG hired Joseph, Joshua's brother, as a technician assistant.

Appellant's Safety Concerns

{¶ 3} During the course of their employment, Appellants raised several safety issues with HCSG. Joseph urged Jeff Pritchard ("Pritchard"), HCSG's Cleveland Branch Manager, to provide employees with training for boom and aerial lifts. Joseph believed certification was required to operate that equipment, especially for governmental jobs. He believed having untrained workers operate this machinery subjected him and his coworkers to an unsafe work environment. Joseph urged Pritchard at least once per month to secure certification training for all employees on the equipment. Pritchard, according to Joseph, refused to secure certification training because it was too expensive. Nevertheless, according to Joseph, HCSG routinely instructed workers to tell clients that they were certified even though they were not.

{¶ 4} On April 8, 2019, Joseph asked Pritchard again to arrange training and certification for employees. He stressed again that it was not safe to have uncertified technicians operating that equipment. He also told Pritchard that he would no longer tell clients that he was certified for the equipment.

{¶ 5} In addition to training, both Appellants complained to Pritchard about personal protective equipment ("PPE"). Joseph routinely complained to Pritchard that the safety cabinet was missing or had inadequate PPE. Specifically, safety glasses, gloves, harnesses, hard hats, and respirators were either missing or in poor condition.

{¶ 6} Joshua also raised this issue. In January 2019, Joshua told Pritchard that his harness was badly worn and needed to be replaced. Pritchard told Joshua that he would address the issue, however, as of March 2019, he had not done so. Joshua verbally reported the issue to HCSG's safety manager noting the harness's poor condition and his belief that it violated Occupational Safety and Health Administration ("OSHA") regulations and/or guidelines. Joshua also verbally reported to HCSG's safety manager that Pritchard had been failing to replenish the safety cabinet, creating an unsafe work environment.

{¶ 7} According to their complaint, HCSG did not address any of the Appellants' complaints.

Joseph's Workplace Injury

{¶ 8} On March 19, 2019, Joseph and two coworkers were assigned to a site in Sandusky, Ohio. Although all employees were issued hard hats, Joseph chose not to wear his. Joseph believed that hard hats were a "site-specific PPE," meaning they were optional unless required by the client. At some point, Joseph hit his head. He suffered a cut and minor bleeding. Nevertheless, Joseph took a short break and then returned to work. Joseph did not report the injury to Pritchard at that time. The next day, Pritchard noticed Joseph sitting in his vehicle. When he asked Joshua what Joseph was doing, Joshua told Pritchard about the injury, and that Joseph had complained of having a headache. Pritchard, concerned that Joseph might have a concussion, went to talk to him. Joseph told Pritchard about the injury and that he was not feeling well. Pritchard had Joseph arrange for a post-accident drug test per company policy. Joseph also spoke to a nurse over the phone about his symptoms. Joseph took a brief sick leave for a few days and returned to work. Pritchard did not advise Joseph about filing a workers' compensation claim, nor did Joseph indicate that he intended to file a claim. Pritchard disciplined Joseph verbally and in writing for failing to wear a hard hat. Joseph alleged that neither of his coworkers was wearing hard hats. Furthermore, Joseph alleged that HCSG did not discipline them. However, Pritchard alleged that when he investigated the incident, Joseph's coworkers told him they were wearing their hard hats.

Appellants' Termination

{¶ 9} A couple of days later, Joseph came into the main office irate. He proceeded to enter the operation manager Traci Swann's ("Swann") office unannounced and failed to knock. This was not Joseph's first inappropriate action towards Swann. There were two other incidents in which Joseph made suggestive comments to Swann. Pritchard was aware of both incidents. In those situations, Pritchard verbally reprimanded Joseph for inappropriate behavior but did not complete a formal write-up of the incidents. On the day in question, Joseph had learned that an employee with less time on the job had received certification training and received a raise. Joseph reportedly came into Swann's office very loudly and aggressively. He used expletives and told Swann to tell Pritchard that he quit. Joseph subsequently sent an email to Pritchard, documenting his concerns about being bypassed for training and formally resigned, giving two weeks' notice. Joseph and Pritchard eventually talked, after which Joseph asked and was permitted to withdraw his resignation. Later it was alleged that Joseph bullied the employee who received the raise and training. However, those incidents were not documented in writing.

{¶ 10} On April 10, 2019, HCSG terminated the Appellants' employment. HCSG cited as the reason for Joseph's termination "[i]nappropriate and unprofessional behavior toward other team members. Inappropriate and aggressive behavior toward management staff. Violation of HCSG Safety PPE policy." HCSG

acknowledged on the termination form that the behavioral issues had not been formally documented.

{¶ 11} HCSG terminated Joshua because he had made disparaging comments about HCSG to a client. Further, the client did not want Joshua to return to their company and noted that they were dissatisfied with his "lackadaisical attitude." Joshua's termination form did not have any notes about prior behavior issues nor did it indicate that he had been informed of these issues or reprimanded before his termination.

{¶ 12} On October 4, 2019, Appellants filed suit against HCSG alleging two counts of wrongful termination in violation of public policy (Counts 1 and 2); and violation of the Ohio Whistleblower Statute, R.C. 4113.52 (Count 3). HCSG filed an answer on December 6, 2019, alleging that the Appellants were terminated for legitimate, nondiscriminatory, and nonretaliatory business reasons, along with other defenses.

{¶ 13} On September 25, 2020, HCSG filed a motion for judgment on the pleadings on Counts 1 and 3. Then on September 28, 2020, HCSG filed a motion for summary judgment on Count 2. On April 6, 2021, the trial court granted HCSG's motion for judgment on the pleadings as to Counts 1 and 3, finding that even construing the facts in Appellants' complaint as true, there were no set of facts that would entitle them to relief. The trial court denied HCSG's motion for summary judgment as to Count 2.

{¶ 14} On July 27, 2021, HCSG filed a motion asking the trial court to reconsider its ruling on its motion for summary judgment. On September 22, 2021, the trial court granted HCSG's motion for reconsideration. The trial court found that there were no genuine issues of material fact and that "[t]here is no evidence that (1) plaintiff [Joseph] Rowe was in the category of persons who are under the protection of the public policy set forth in R.C. 4123.90 at the time he was terminated and 2) [Joseph] Rowe never engaged in protected activity, and thus cannot have been retaliated against for engaging in protected activity."

{¶ 15} Appellants appeal those rulings and assign the following errors for our review:

### Assignment of Error No. 1

The trial court erred in granting judgment on the pleadings on the Rowes' common-law claim invoking the public policy favoring workplace safety.

### Assignment of Error No. 2

The trial court erred in granting summary judgment on Joseph Rowe's *Sutton* claim.

**Law and Analysis**

{¶ 16} In both assignments of error, Appellants challenge the trial court's findings with respect to their wrongful termination in violation of public policy claims. In the first assignment of error, Appellants challenge the trial court's grant of HCSG's motion for judgment on the pleadings as to count one of their complaint.[1]

---

[1] Appellants have elected not to challenge the trial court's ruling as to Count 3, violation of Ohio's Whistleblower Statute, so we will not address it in this opinion.

Appellants allege that they were terminated in retaliation for reporting workplace safety issues to HGSC management. In the second assignment of error, Appellant Joseph Rowe challenges the trial court's grant of summary judgment as to Count 2 of the complaint. Joseph alleges that HGSC terminated him in anticipation of and to prevent him from filing a workers' compensation claim. Because the two assignments of error address the tort of wrongful termination in violation of public policy, we will examine it first.

*Wrongful Termination in Violation of Public Policy — Generally*

{¶ 17} Ohio is traditionally an employment-at-will state, meaning that either the employer or employee may terminate the employment relationship for any cause or no cause. *Miracle v. Ohio Dept. of Veterans Servs.*, 157 Ohio St.3d 413, 2019-Ohio-3308, 137 N.E.3d 1110, ¶ 11, citing *Collins v. Rizkana*, 73 Ohio St.3d 65, 67, 652 N.E.2d 653 (1995). However, the Supreme Court of Ohio identified an exception to the traditional rule, recognizing that a termination that violates public policy could be actionable. *Id.,* citing *Greeley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990), paragraph one of the syllabus. In *Greeley*, the Supreme Court recognized that an exception to the employment-at-will doctrine was warranted when an employee was discharged or disciplined for reasons that are prohibited by statute. *Greeley* paragraph one of the syllabus. *Greeley* specifically dealt with an employee who was terminated because a garnishment order was issued requiring the employer to withdraw money from his wages to pay his child support obligations. R.C. 3113.213(D) prohibited an employer from discharging or

disciplining an employee on the basis of such an order. Preliminarily, the court recognized that there was a growing trend in the country that recognized termination at will could be modified in such circumstances. *Id.* at 233-234. Looking at Ohio law, the legislative history of the statute, and its ties to federal child support legislation, the court determined that

> [t]he General Assembly has expressed its will that employers be prohibited from discharging employees for the reason upon which appellant bases his cause of action. It is our job to enforce, not frustrate, that policy.

> Therefore, we hold that public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute.

*Greeley* at 233-234.

{¶ 18} Over time, the court expanded the tort beyond public policy expressed in statutes to include public policy as set forth in the federal and state constitutions, administrative regulations, or the common law. In so doing, the court adopted a four-part test in order to prove that someone was wrongfully terminated in violation of public policy. A plaintiff must establish:

> 1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity clement).

> 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).

> 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).

> 4. The employer lacked overriding legitimate business justifications for the dismissal (the overriding justification element).

*Collins v. Rizkana*, 73 Ohio St.3d 65, 69, 652 N.E.2d 653, quoting *H. Perritt, The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie?*, 58 U.Cin.L.Rev. 397, 398-399 (1989).

*Wrongful termination in violation of a public policy for workplace safety*

{¶ 19} With that framework in mind, we turn to appellants' first assignment of error arguing that the trial court erred in granting appellee's motion for judgment on the pleadings as to count one.

*Standard of Review*

{¶ 20} Preliminarily, a judgment on the pleadings deals solely with issues of law, therefore our review is de novo. *New Riegel Local School Dist. Bd. of Edn. v. Buehrer Group Architecture & Eng., Inc.*, 157 Ohio St.3d 164, 2019-Ohio-2851, 133 N.E.3d 482, ¶ 8, citing *Rayess v. Educational Comm. For Foreign Med. Graduates*, 134 Ohio St.3d 509, 2012-Ohio-5676, 983 N.E.2d 1267, ¶ 18. De novo review requires an independent examination of the record and law without deference to the trial court's decision. *Torres v. Concrete Designs, Inc.*, 2019-Ohio-1342, 134 N.E.3d 903, ¶ 48 (8th Dist.), citing *Gateway Consultants Group, Inc. v. Premier Physicians Ctrs. Inc.*, 8th Dist. Cuyahoga No. 104014, 2017-Ohio-1443, ¶ 22, citing *Demeraski v. Bailey*, 2015-Ohio-2162, 35 N.E.3d 913, ¶ 11 (8th Dist.).

{¶ 21} A judgment on the pleadings limits our review "solely to the allegations in the complaint and answer, as well as any material attached as exhibits to those pleadings." *Schmitt v. Educational Serv. Ctr.*, 2012-Ohio-2208, 970 N.E.2d 1187, ¶ 10 (8th Dist.), citing *State ex rel. Midwest Pride IV, Inc. v. Pontious*,

75 Ohio St.3d 565, 569, 664 N.E.2d 931 (1996). Further, we must consider the factual allegations in the complaint as true, although unsupported conclusions are insufficient to defend against the motion. *Pincus v. Dubyak*, 8th Dist. Cuyahoga No. 110135, 2021-Ohio-3034, ¶ 17.

{¶ 22} When a defendant requests judgment on the pleadings, it is appropriate to grant the motion when the plaintiff's complaint has failed to allege facts that, if true, would establish the defendant's liability. *Id.* at ¶ 17, citing *Walters v. First Natl. Bank*, 69 Ohio St.2d 677, 433 N.E.2d 608 (1982). In other words, to grant a motion for judgment on the pleadings, the court must determine that no material factual issues exist and that the moving party is entitled to judgment as a matter of law. *Id.,* quoting *Pontious* at 570.

*Analysis*

{¶ 23} As discussed earlier, there are four prongs to the test for wrongful termination in violation of public policy. The first prong, the clarity element; and the second prong, the jeopardy element, involve questions of law. *Collins v. Rizkana*, 73 Ohio St.3d 65, 69-70, 652 N.E.2d 653 (1995). They encompass the determination of whether there is a public policy covering the conduct alleged in a case and whether that public policy is put in jeopardy by that conduct. *Id.* The third prong, the causation element, and the fourth prong, the overriding justification element, are considered to be questions of fact. *Id.* These prongs consider whether the plaintiff's termination was motivated by conduct related to the public policy and whether the employer had an overriding legitimate business justification for the

termination. *Id.* Because judgment on the pleadings is a mechanism used to resolve questions of law, the factual elements of this case are not before us. *Sutton v. Tomco Machining, Inc.*, 129 Ohio St.3d 153, 2011-Ohio-2723, 950 N.E.2d 938, ¶ 10. The causation and overriding justification elements must be proven on remand, if necessary. *Id.* For purposes of judgment on the pleadings, we consider the factual elements of the complaint as true and determine, if true whether the plaintiff has failed to claim facts that establish the defendant's liability. *Pincus v. Dubyak*, 8th Dist. Cuyahoga No. 110135, 2021-Ohio-3034, ¶ 17. Accordingly, we consider the clarity and jeopardy elements only.

## The Clarity and Jeopardy Elements

{¶ 24} Under the clarity element, plaintiff's complaint must cite to evidence of a clear public policy in Ohio that HCSG's alleged conduct violates. *See Rizkana*, 73 Ohio St.3d at 70, 652 N.E.2d 653.

> [T]o satisfy the clarity element of a claim of wrongful discharge in violation of public policy, a terminated employee must articulate a clear public policy by citation to specific provisions in the federal or state constitution, federal or state statutes, administrative rules and regulations, or common law. A general reference to workplace safety is insufficient to meet the clarity requirement.

*Dohme v. Eurand Am., Inc.*, 130 Ohio St.3d 168, 2011-Ohio-4609, 956 N.E.2d 825, ¶ 24.

{¶ 25} Here, the Rowes argue that HCSG created an unsafe work environment in three ways, 1) failing to ensure workers were trained and certified in using aerial and boom lifts; 2) failing to provide adequate safety equipment; and 3)

failing to repair or replace Joshua's harness. In support of this argument, the Rowes cite R.C. 4101.11 evidencing a public policy for workplace safety that HCSG violated by its conduct.

{¶ 26} This court has previously examined R.C. 4101.11 as a source of public policy protecting workplace safety. At the time, we found that R.C. 4101.11 could not be used as a basis for a wrongful termination in violation of public policy claim. Comparing R.C. 4101.11 to the statute in *Greeley*, we found that R.C. 4101.11

> is not a stricture against certain actions of an employer with a penalty involved for noncompliance but rather an exhortation to the employer to fulfil [sic] an essentially *moral* duty or societal obligation. Liability in tort cannot be premised on this basis.

(Emphasis sic and citations omitted.) *Radikovich v. Higbee Co.*, 8th Dist. Cuyahoga No. 65374, 1994 Ohio App. LEXIS 2080, ¶ 17 (May 12, 1994).

{¶ 27} Subsequently, the Ohio Supreme Court recognized that "[t]he public policy of this state demands that employees be provided with a safe work environment and that unsafe working conditions be corrected." *Kulch v. Structural Fibers*, 78 Ohio St.3d 134, 152-153, 677 N.E.2d 308 (1997). *Kulch* cites several authorities in support of its finding including R.C. 4101.11. R.C. 4101.11 states,

> Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters.

{¶ 28} The Supreme Court has expressly identified a public policy for workplace safety in *Kulch* and reiterated that finding in *Pytlinski v. Brocar Prods., Inc.*, 94 Ohio St.3d 77, 760 N.E.2d 385 (2002) ("Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted."). *Pytlinski* also cites R.C. 4101.11 as one source of this public policy.

{¶ 29} Nevertheless, subsequent to these decisions, some appellate districts have questioned whether R.C. 4101.11, typically in conjunction with R.C. 4101.12,[2] is specific enough to support a public policy of workplace safety. In *Whitaker v. First Energy Nuclear Operating Co.*, 6th Dist. Ottawa No. OT-12-021, 2013-Ohio-3856, ¶ 21, 25, the Sixth District, found R.C. 4101.11 and 4101.12 to be very general and broad, and found them insufficient to satisfy the clarity requirement, where the party fails "to establish that any of these statutes were applicable to his claim or had any bearing on the facts at issue in the case."

{¶ 30} However, in contrast, the Tenth District, explicitly disagreed with the court in *Whitaker* finding that R.C. 4101.11 and 4101.12 "together establish that there exists a clear public policy that is manifested in a state or federal constitution,

---

[2] R.C. 4101.12 provides: No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe. No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters. No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe.

statute or administrative regulation in Ohio favoring workplace safety for employees and frequenters." *Blackburn v. Am. Dental Ctrs.*, 10th Dist. Franklin No. 13AP-619, 2014-Ohio-5329. As *Kulch* and *Pytlinski* are still binding law, we find the Tenth District's analysis persuasive. However, we agree with the *Whitaker* Court to the extent that it found the statute cited by the plaintiff must identify a public policy concern that applies to the facts of the case.

{¶ 31} Appellants have elected to rely solely on R.C. 4101.11 as the source of public policy in this case; however, that reliance is misplaced. In order to meet the clarity element, Appellants must cite to a specific source of public policy that is violated by HCSG's conduct. *Dohme,* 130 Ohio St.3d 168, 2011-Ohio-4609, 956 N.E.2d 825 at ¶ 24. Appellants identify R.C. 4101.11 and argue that HCSG's actions in failing to provide adequate equipment, failing to replace damaged equipment, and failing to provide training violates that public policy. However, R.C. 4101.11 has long been recognized as a premises liability statute. It is "a codification of the common-law duty owed by the owner or occupier of premises to business invitees to keep his premises in a reasonably safe condition and to give warnings of latent or concealed perils of which he has, or should have, knowledge." *Westwood v. Thrifty Boy Super Mkts., Inc.*, 29 Ohio St.2d 84, 86, 278 N.E.2d 673 (1972). Appellants' complaint fails to allege safety issues covered by the public policy expressed in R.C. 4101.11. Furthermore, Appellants failed to either allege that HCSG kept the premises in an unsafe condition or did not warn of latent or concealed perils. Consequently, their complaint does not specify a public policy violation committed

by HCSG. Therefore, Appellants' complaint failed to establish that their termination was in violation of a clear public policy.

{¶ 32} We need not examine whether Appellants established the jeopardy element. Having failed to satisfy the clarity element, they have failed to establish a claim for wrongful termination in violation of public policy. *See Dohme,* 130 Ohio St.3d 168, 2011-Ohio-4609, 956 N.E.2d 825 at ¶ 26 (Where plaintiff failed to establish that his termination was in violation of a clear public policy, his action "must fail because establishment of the clarity element is essential to the survival of his remaining claims.").

{¶ 33} Accordingly, we overrule Appellants' first assignment of error.

### *Wrongful termination in violation of public policy—workers' compensation retaliation*

{¶ 34} In the second assignment of error, Appellants argue that the trial court erred in granting HCSG's motion for summary judgment on Count 2, Joseph's wrongful termination claim regarding workers' compensation retaliation.

### *Standard of Review*

{¶ 35} Like a ruling on a motion for judgment on the pleadings, our review of a summary judgment decision is de novo. *Khalia Ra v. Swagelok Mfg. Co., L.L.C.,* 8th Dist. Cuyahoga No. 109789, 2021-Ohio-1657, ¶ 16, citing *Montgomery v. Greater Cleveland Regional Transit Auth.*, 8th Dist. Cuyahoga No. 109559, 2021-Ohio-1198, ¶ 18, citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). De novo review requires an independent examination of the

record and law without deference to the trial court's decision. *Torres,* 2019-Ohio-1342, 134 N.E.3d 903 at ¶ 48, citing *Gateway Consultants Group, Inc.,* 8th Dist. Cuyahoga No. 104014, 2017-Ohio-1443 at ¶ 22, citing *Bailey,* 2015-Ohio-2162, 35 N.E.3d 913 at ¶ 11.

{¶ 36} Summary judgment is warranted when (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, the moving party is entitled to summary judgment. *Khalia Ra* at ¶ 17, Civ.R. 56(C). "'Once the moving party demonstrates entitlement to summary judgment, the burden shifts to the nonmoving party to produce evidence related to any issue on which the party bears the burden of production at trial. Civ.R. 56(E).'" *Id.,* quoting *Mattress Matters, Inc. v. Trunzo,* 2016-Ohio-7723, 74 N.E.3d 739 ¶ 10.

*Wrongful Termination in violation of public policy workers' compensation retaliation*

{¶ 37} In the instant case, after initially denying HCSG's summary judgment motion, the trial court reconsidered and granted the motion finding that there remained no genuine issue of material fact because there was no evidence that "(1) plaintiff [Joseph] Rowe was in the category of persons who are under the protection of the public policy set forth in R.C. 4123.90 at the time he was terminated and 2) [Joseph] Rowe never engaged in protected activity, and thus cannot have been retaliated against for engaging in protected activity."

{¶ 38} R.C. 4123.90 states:

> No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer. Any such employee may file an action in the common pleas court of the county of such employment in which the relief which may be granted shall be limited to reinstatement with back pay, if the action is based upon discharge, or an award for wages lost if based upon demotion, reassignment, or punitive action taken, offset by earnings subsequent to discharge, demotion, reassignment, or punitive action taken, and payments received pursuant to section 4123.56 and Chapter 4141. of the Revised Code plus reasonable attorney fees * * *.

{¶ 39} R.C. 4123.90 provides a cause of action when an employee is terminated after filing a workers' compensation claim. However, the Supreme Court has recognized that the public policy of Ohio also allows a cause of action when an employer discharges an employee after they are injured but prior to the employee filing a workers' compensation claim. In *Sutton*, Sutton injured his back while disassembling a chop saw while at work. Sutton reported the injury to Tomco's president, and an hour later Sutton was terminated. Sutton had worked for Tomco for two and one-half years and was assured that he was not being fired due to any work ethic or job performance issue or because Sutton had broken any work rule or company policy. *Id*. at ¶ 2. Sutton sued alleging unlawful retaliation under R.C. 4123.90 and wrongful discharge in violation of public policy. Tomco moved for judgment on the pleadings, and the trial court granted the motion as to both claims. *Sutton* appealed and the Second District Court of Appeals affirmed the judgment in part and reversed in part. The court found that R.C. 4123.90 did not expressly apply

to *Sutton*, but that the discharge violated the public policy expressed in R.C. 4123.90. The Supreme Court agreed finding there was a gap in protection between when an injury occurs and when a claim is filed, instituted, or pursued. *Id.* at ¶ 14. The court found that

> the General Assembly did not intend to leave a gap in protection during which time employers are permitted to retaliate against employees who might pursue workers' compensation benefits. The alternative interpretation — that the legislature intentionally left the gap — is at odds with the basic purpose of the antiretaliation provision, which is "to enable employees to freely exercise their rights without fear of retribution from their employers." *Coolidge v. Riverdale Local School Dist*, 100 Ohio St.3d 141, 2003-Ohio-5357, 797 N.E.2d 61, ¶ 43

*Sutton*, 129 Ohio St.3d 153, 2011-Ohio-2723, 950 N.E.2d 938 at ¶ 22.

{¶ 40} Joseph never filed a workers' compensation claim, so as the trial court noted, he was not entitled to relief under R.C. 4123.90. However, as *Sutton* illustrates, a claim for wrongful termination in violation of public policy is allowed if Joseph can establish that he was terminated in order to prevent him from filing a workers compensation claim. "'*Sutton* created a very limited exception for 'employees who might pursue workers' compensation benefits' against their employer in the future." *McGree v. Gateway Healthcare Centre, L.L.C.*, 2019-Ohio-988, 125 N.E.3d 981, ¶ 12 (8th Dist.), quoting *Sutton* at ¶ 22.

{¶ 41} Through *Sutton,* the Supreme Court found that there is a clear public policy expressed through R.C. 4123.90 against terminating employees after an injury but before they file a claim. Therefore, the trial court erred when it found that Joseph was not covered by the public policy protection expressed in R.C. 4123.90.

That public policy, as expressed in *Sutton,* provides that a person who is terminated after suffering a workplace injury may be entitled to sue if they can establish that they were fired to prevent them from exercising their right to apply for workers' compensation benefits. To the extent that the trial court found otherwise, it erred. Nevertheless, we must still determine whether Joseph's termination violated this public policy.

{¶ 42} In their motion for summary judgment, HCSG challenged the causation element, arguing that Joseph was unable to show that HCSG terminated him to prevent him from filing a workers' compensation claim. HCSG argued that Joseph suffered a minor scratch on the head that did not put the company on notice that Joseph was likely to file a workers' compensation claim. Furthermore, HCSG argues, after a day or two off, Joseph notified Pritchard that his symptoms resolved and that he wanted to return to work.

{¶ 43} In response, Joseph alleged that HCSG's intent was demonstrated by Pritchard's knowledge of the nature of head injuries. Joseph alleged that Pritchard was aware and commented that a head injury could have long-lasting effects and might show symptoms at any time. Per Joseph, further evidence of HCSG's motive is that Pritchard told him if Joseph had gone to the hospital, it would have negatively impacted HCSG's safety record. Joseph suggests this evidence and the fact that he was terminated within weeks of his injury are sufficient to create a genuine issue of material fact as to whether he was terminated to prevent him from filing a workers' compensation claim. We disagree.

{¶ 44} The mere fact that an employee is terminated after suffering a workplace injury does not automatically create a presumption that the termination was retaliatory. *Sutton,* 129 Ohio St.3d 153, 2011-Ohio-2723, 950 N.E.2d 938 at ¶ 10 ("Because a discharge could be for reasons other than those related to worker's compensation, * * * no presumption of retaliation arises from the fact that an employee is discharged soon after an injury."). "[T]he retaliatory nature of the discharge and its nexus with workers' compensation must be established by a preponderance of the evidence." *Id.* A preponderance of the evidence is "that measure of proof that convinces the judge or jury that the existence of the fact sought to be proved is more likely than its nonexistence." *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, ¶ 54.

{¶ 45} In the instant case, Joseph's decision to resign shortly after he was injured is significant. Had HCSG intended to fire Joseph in order to avoid a workers' compensation claim, the company could have accepted his resignation and refused to allow him to withdraw it, as is their right in an at-will employment state.

{¶ 46} Additionally, Joseph's allegations that HCSG terminated him to prevent a workers' compensation claim are merely speculative. Joseph did not file a claim. Further, he did not provide any evidence that he took any steps to begin the process of filing a claim. Even if Pritchard did suggest that HCSG would have taken issue with Joseph going to the hospital, Pritchard did not forbid him from going. The entire situation surrounding Joseph's injury amounted to a few days off work. However, subsequently, Joseph engaged in conduct that was inappropriate and

unacceptable. Joseph's testimony that HCSG had concerns about the nature of his injury and the potential of a future claim is not supported by any other evidence in the record.

{¶ 47} Nevertheless, Joseph argues that the proximity between his injury and his termination is evidence of HCSG's intent. Joseph cites several cases in support of his claim. However, the cases are unavailing to his point. In each of those cases, the employee engaged in protected activity shortly before they were terminated. In *Thatcher v. Goodwill Industries,* 117 Ohio App.3d 525, 690 N.E.2d 1320 (9th Dist.1997), the employee informed his superiors that a number of female employees reported being sexually harassed by a coworker. The employee was terminated a month after making the report. The Ninth District Court of Appeals found that the employee had laid out a prima facie case for retaliatory discharge noting that the timing of the termination was evidence that his engagement in protected activity, i.e., reporting sexual harassment, caused his termination.

{¶ 48} Similarly, in *Dover v. Carmeuse Natural Chems.*, 5th Dist. Perry No. 10-CA-8, 2010-Ohio-5657, the employee was injured on the job and, after notifying his employer, was off work for several days. Shortly afterwards, he filed a workers' compensation claim. The employee was terminated two months later and filed suit alleging retaliatory discharge. The court noted a number of factors that would infer a retaliatory motive for the firing. Among them was that the employee's exercise of protected conduct was closely followed by some adverse employment action. *Id.* at ¶ 47, citing *Young v. Stelter & Brinck, Ltd.*, 174 Ohio App.3d 221, 2007-Ohio-6510,

881 N.E.2d 874, ¶ 24 (1st Dist.); *Pflanz v. Cincinnati,* 149 Ohio App.3d 743, 2002-Ohio-5492, 778 N.E.2d 1073 (1st Dist.). However, the court also noted timing alone was insufficient to show a causal link between the employees' act and termination. *Id.*

{¶ 49} Other cases cited by Appellant fit the same pattern. *See Zechar v. Ohio Dept. of Edn.,* 121 Ohio Misc.2d 52, 2002-Ohio-6873, 782 N.E.2d 163 (Ct. of Cl.) (employee made prima facie case for retaliatory discharge when she was informed after extended FMLA leave that her position was being eliminated.); *Kosut v. First Energy Corp.,* 7th Dist. Jefferson No. 12 JE 8, 2013-Ohio-2876 (employee who was terminated an hour after making a supposedly anonymous sexual harassment complaint to an employer hotline made prima facie case for retaliatory discharge), *Payton v. Receivables Outsourcing, Inc.,* 163 Ohio App.3d 722, 2005-Ohio-4978, 840 N.E.2d 236 (8th Dist.) (employee established elements of retaliatory discharge after being terminated within one day of reporting sexual harassment to the employer).

{¶ 50} HCSG established that there was no nexus between Joseph's injury and his termination. There were a number of intervening factors, including Joseph's problematic behavior and his resignation that significantly overshadows a retaliation claim. Examining the entire record and looking at the totality of the circumstances, Joseph has failed to establish a genuine issue of material fact.

{¶ 51} Accordingly, we overrule the second assignment of error.

{¶ 52} Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

SEAN C. GALLAGHER, A.J., and
MARY EILEEN KILBANE, J., CONCUR