[Cite as *Ra v. Swagelok Mfg. Co., L.L.C.*, 2021-Ohio-1657.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

KHALIA RA,                                          :

     Plaintiff-Appellant,              :

                               No. 109789

     v.                                          :

SWAGELOK MANUFACTURING              :
CO., L.L.C., ET AL.,

     Defendants-Appellees.         :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 13, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-918511

---

### *Appearances:*

The Spitz Law Firm, L.L.C., Brian D. Spitz, and Angela
Rodriguez, *for appellant.*

Mansour Gavin, L.P.A., Amy L. Kullik, and Kenneth E.
Smith, *for appellee.*

ANITA LASTER MAYS, P.J.:

{¶ 1} Plaintiff-appellant Khalia Ra ("Ra") appeals the trial court's decision
to grant summary judgment in favor of defendants-appellees, Swagelok

Manufacturing Co., L.L.C. ("Swagelok"), Angelo Smith ("Smith"), and Nathan Walker ("Walker"), collectively ("appellees"). After a thorough review of the record, we affirm the trial court's decision.

{¶ 2} On July 19, 2019, Ra filed a complaint against the appellees alleging sexual harassment, gender discrimination, and retaliation in violation of R.C. 4112.02. The appellees filed a motion for summary judgment and the trial court granted the motion, holding in its journal entry:

> The court, having considered all the evidence and having construed the evidence most strongly in favor of the non-moving party, determines that reasonable minds can come to but one conclusion, that there are no genuine issues of material fact, and that defendant is entitled to judgment as a matter of law. Plaintiff has failed to establish a prima facie case of retaliation, sexual harassment, and/or gender discrimination, specifically, plaintiff failed to establish a causal connection between the protected activity and adverse action, defendants took immediate and appropriate corrective action to the single complaint of sexual harassment, and defendants had legitimate, non-discriminatory reasons for termination.

Journal entry No. 113446583 (May 29, 2020).

## I.    Facts

{¶ 3} On April 16, 2018, Ra was hired by Swagelok as an assembler. Walker was Ra's supervisor. Ra was trained by Ervin Grant ("Grant"). Grant started asking Ra if she had a significant other and if he could take her out. Ra stated that Grant's questions made her feel uncomfortable, therefore, she asked Walker for another trainer. Despite Ra's request, training with Grant continued and he continued asking Ra out. Grant began rubbing Ra's shoulders and then moved to touching her

thigh. This time Ra reported Grant to Walker and human resources. The events reported by Ra were investigated by Swagelok, and Grant was disciplined and Ra was assigned a new trainer.

{¶ 4} In accordance with Swagelok's policies, all sexual harassment claims are investigated by a Human Resources Business Partner ("HRBP"). HRBP investigates the claims and determines whether the claims have any merit. If the evidence is insufficient to determine if sexual harassment took place, HRBP follows up with all involved individuals and reeducates them on Swagelok's harassment policy. If the evidence is sufficient to determine sexual harassment took place, the individual who is guilty of harassing is held accountable based on the severity of the conduct. The individual's punishment can range from being placed on an Associate Improvement Plan ("AIP") to being terminated from employment.

{¶ 5} After HRBP investigated Ra's claims, they found sufficient evidence that Grant engaged in sexual harassment and placed him on a Level 1, three-month AIP. As a result of Ra's disclosures of sexual harassment, Ra states that Grant and another coworker began calling her a snitch. Ra states that she reported the retaliation to Walker. Walker denies that Ra reported the "snitch" calling incidents to him.

{¶ 6} Shortly thereafter, Ra began having panic attacks and requested to leave her current assignment. Walker informed Ra that she would have to submit a doctor's note to be reassigned. Ra submitted the doctor's note to Smith, another

supervisor, because Walker was on vacation. Ra was reassigned to another department and campus, where she was then supervised by Smith. Prior to reassignment, Ra states that she requested overtime and was denied. Ra believed that Walker approved another female for overtime. Walker denied that Ra ever asked for overtime. Ra reported her concerns to HRBP. After an investigation it was determined that overtime was evenly distributed and aligned according to worker's qualifications.

{¶ 7} After moving to another campus, Ra was assigned to another trainer, but at Ra's request, was removed because Ra felt as if the new trainer was picking on her. Ra's supervisor assigned yet another trainer, Ramona Hunter ("Hunter"). Ra testified that on her first day of training with Hunter, Hunter told her that Smith was out to get her and that there were rumors that Ra had a sexual relationship with another male coworker. Hunter denied making the statements. Ra reported the rumors to Smith, stating that another coworker was spreading rumors about her having a sexual relationship. Smith told Ra to see if the rumors would die down, but to report any additional incidences. Hunter testified that she noticed Ra making minor mistakes, as a result of not receiving proper training. However, Smith directed Hunter to issue Ra quality notices for improper work, even though Hunter did not normally give quality notices for minor errors to trainees because they were still learning the job.

{¶ 8} On another workday, Ra, while working on the shop floor, received a text message from her son. Ra texted him back, and was observed by another supervisor, Brian Osborne ("Osborne"). Osborne reminded Ra that company policy prohibits cell phone usage on the shop floor. Ra claimed that Osborne began yelling at her and threatening to report her to Smith. However, Ra was observed by witnesses yelling at Osborne, telling him to "get the fu*k out of here." Smith arrived during the incident, took Ra to a separate room, and spoke with her about the incident. Ra began crying, and Smith allowed Ra to leave for the day. Ra claims to have observed other coworkers, in the past, on their cell phones in the presence of supervisors, and were not reprimanded. After the incident, Smith initiated an investigation into the altercation between Ra and Osborne.

{¶ 9} HRBP investigated the incident. The witness statements were inconsistent, but Ra was reported as saying "her dad said she should register her hands because they are deadly." HRBP placed Ra on a Level 3 AIP for being disrespectful to a supervisor and creating a hostile work environment. Ra was notified that being placed on a Level 3 AIP required her to improve her performance and that any future infraction could result in her termination.

{¶ 10} On November 1, 2018, Ra filed another report to Smith, that someone told her three other coworkers were making sexual comments about her. Smith stated that after Ra informed him of the rumors, she expressed that she did not want to escalate the report to human resource, but just wanted him to be aware. Ra and

Smith agreed that they would see if the situation calmed down, and Ra would inform Smith if the rumors continued. Smith investigated Ra's claims and ordered she and the other employees to watch a video about sexual harassment and discrimination. Ra met with Smith on December 12, 2018, and told him that she felt targeted by the AIP and sexual harassment video.

{¶ 11} Next, Ra filed another complaint to Smith about another coworker making a threatening jump towards her at the office holiday party. Ra stated that she felt as if the coworker was going to attack her. Ra filed a charge of discrimination with Equal Employment Opportunity Commission and met with the human resources manager to discuss her complaints and concerns.

{¶ 12} On January 30, 2019, Ra was observed in the welding area and shop floor without safety glasses, because they were on her forehead. Ra claimed that she did not believe she was in an area that required safety glasses, but a supervisor approached her and told her to put the safety glasses on her eyes. The supervisor asked Ra twice to put on safety glasses. Instead of putting the safety glasses on, Ra walked away because she did not believe she was on the shop floor, but rather in front of the exit door.

{¶ 13} Upon learning Ra's name and that she was supervised by Smith, the following day, the supervisor reported to Smith that Ra refused to wear safety glasses on the shop floor. Smith met with Ra and told her that her refusal to wear

safety glasses on the shop floor was a direct violation of her Level 3 AIP and could result in her termination.

{¶ 14} Smith escalated the latest incident to human resources and made a recommendation to terminate Ra. Ra was terminated on February 5, 2019, for Code of Conduct and Core Values infractions, in violation of her Level 3 AIP.

{¶ 15} Ra filed suit against the appellees. The trial granted the appellees' summary judgment motion, and Ra filed this appeal assigning four errors for our review:

I.   The trial court committed reversible error by finding that Ra did not satisfy her prima facie case for sexual harassment when it determined that Ra made a single report of sexual harassment and that appellees took immediate and appropriate corrective action;

II.  The trial court committed reversible error by determining that no genuine issue of material fact remained as to whether Ra met her prima facie case for retaliation under R.C. 4112.01, et seq.;

III. The trial court committed reversible error by determining that no genuine issue of material fact remained as to whether Ra met her prima facie case for gender discrimination under R.C. 4112.01, et seq.; and

IV.  The trial court committed reversible error by determining that no genuine issue of material fact remained as to whether appellees' alleged reasons for disciplining and termination Ra were pretext for discrimination and/or retaliation.

## II.   Summary Judgment

### A.   Standard of Review

**{¶ 16}** "We review summary judgment rulings de novo, applying the same standard as the trial court." *Montgomery v. Greater Cleveland Regional Transit Auth.*, 8th Dist. Cuyahoga No. 109559, 2021-Ohio-1198, ¶ 18 citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "We accord no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate." *Id.*

**{¶ 17}** Under Civ.R. 56, summary judgment is appropriate when (1) no genuine issue as to any material fact exists; (2) the party moving for summary judgment is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party. Civ.R. 56. "Once the moving party demonstrates entitlement to summary judgment, the burden shifts to the nonmoving party to produce evidence related to any issue on which the party bears the burden of production at trial. Civ.R. 56(E)." *Mattress Matters, Inc. v. Trunzo*, 2016-Ohio-7723, 74 N.E.3d 739, ¶ 10 (8th Dist.).

### B. Law and Analysis

**{¶ 18}** In Ra's first assignment of error, she argues that the trial court erred by finding that Ra did not satisfy her prima facie case for sexual harassment. According to the Supreme Court of Ohio:

> In order to establish a claim of hostile-environment sexual harassment, the plaintiff must show (1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the

> "terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action.

*Hampel v. Food Ingredients Specialties*, 89 Ohio St.3d 169, 176, 729 N.E.2d 726 (2000).

{¶ 19} We determine that the record supports that Ra demonstrated the harassment by Grant was unwelcomed evidenced by the fact that on the first day Grant begin asking relationship questions that made Ra uncomfortable. The questions were based on sex where Grant questioned if Ra had a significant other, asked her out, later begin rubbing her shoulders and eventually touched her thigh. The actions were sufficiently severe to affect her employment, and that the employer knew or should have known of the harassment.

{¶ 20} The record demonstrates that Ra informed Walker of the initial comments and the escalated actions of Grant. After reporting Grant's actions to human resources, the record demonstrates that an investigation began immediately and Grant was thereafter removed as Ra's trainer and placed on a Level 1 AIP for a period of three months. Generally, a response by an employer is adequate if its purpose was to end the harassment. *McGraw v. Pilot Travel Ctrs., LLC*, 10th Dist. Franklin No. 11AP-699, 2012-Ohio-1076, ¶ 25. "And whether a response is effective is measured not by the extent to which the employer disciplines or punishes the alleged harasser, but rather if the steps taken by the defendant halt the harassment."

*Id.* We determine that Swagelok's removal of Grant as Ra's trainer and Grant's AIP punishment halted his harassment of Ra.

{¶ 21} However, Ra argues further that she made several reports of sexual harassment, exclusive of Grant. Ra states that she told Smith on two separate occasions that her coworkers were making sexual comments about her, and that Smith failed to report Ra's complaints to human resources. These sexual comments referenced Ra having a sexual relationship with another coworker. We note these comments were not made to Ra, but she learned of the comments through a coworker. We find that Ra does not demonstrate how the coworkers' comments about a sexual relationship with another coworker was based on her gender or sex or has a sexual element.

> [H]arassing conduct that is simply abusive, with no sexual element, can support a claim for hostile-environment sexual harassment if it is directed at the plaintiff because of his or her sex. However, harassment is not automatically discrimination because of sex merely because the words used have sexual content or connotations.

*Hampel*, 89 Ohio St.3d 169, 176, 729 N.E.2d 726, at 180.

{¶ 22} Ra also does not demonstrate how these comments were sufficiently severe or pervasive to affect the terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

> [I]n order to determine whether the harassing conduct was "severe or pervasive" enough to affect the conditions of the plaintiff's employment, the trier of fact, or the reviewing court, must view the work environment as a whole and consider the totality of all the facts and surrounding circumstances, including the cumulative effect of all episodes of sexual or other abusive treatment.

*Id.* at 181.

{¶ 23} Looking at the cumulative effect of the all of the episodes, Ra's additional claims of sexual harassment do not meet the standard of a prima facie case of sexual harassment. Ra's reporting to Smith was followed by a mutual agreement to see if the rumors subsided with instruction to report any new incidents. Therefore, Ra's first assignment of error is overruled.

{¶ 24} In Ra's second assignment of error, she argues that the trial court erred by determining that Ra failed to meet her prima facie case for retaliation. "[I]n order for a plaintiff to prevail on a retaliation claim brought pursuant to R.C. 4112.02(I), she must establish that her protected activity was the reason for the adverse employment action taken against her." *Wholf v. Tremco Inc.*, 2015-Ohio-171, 26 N.E.3d 902, ¶ 39 (8th Dist.).

{¶ 25} Ra argues that both she and Grant were involved in sexual harassment complaints, but were treated vastly different, because Grant was placed on Level 1 AIP, and Ra on Level 3 AIP. Ra also claims that she was terminated as retaliation for reporting sexual harassment. However, we find that Ra's claims are misplaced. The record reveals that Ra was placed on Level 3 AIP not because of sexual harassment complaints, but because of the verbal altercation between Ra and Osborne, who did not have any involvement with her sexual harassment complaints. Osborne reprimanded Ra for using her cell phone on the shop floor against company

policy. After an investigation, it was determined that Ra engaged in disrespectful and threatening behavior towards Osborne, a supervisor.

{¶ 26} Additionally, the record reveals that Ra was recommended for termination, in violation of her Level 3 AIP, after refusing to wear safety glasses on the shop floor. The supervisor that observed Ra on the shop floor with her safety glasses on her forehead did not know who Ra was. Upon learning her identity, Ra's behavior was reported to Smith. Further, the shop supervisor had no involvement with Ra's sexual harassment complaint and the record does not reflect that Ra's prior complaint was a factor in the decision to terminate her.

{¶ 27} However, Ra claims that Smith had knowledge and that he was the one who recommended her termination. Ra, however, fails to demonstrate how Smith's recommendation for termination was a result of her sexual harassment complaints. Ra committed an infraction while being on Level 3 AIP.

> [T]he plaintiff's evidentiary burden of establishing a prima facie case in the first step of the burden-shifting analysis is one of production, not persuasion, and it is not "onerous." [*Texas Dept. of Community Affairs v.*] *Burdine*, 450 U.S. at 255-256[, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)]. * * * the plaintiff is not required to conclusively prove all the elements of his claim at the prima facie stage of the burden-shifting analysis. * * * the plaintiff must ultimately prove, by a preponderance of the evidence, that the plaintiff's protected activity was the determinative factor in the employer's adverse employment action.

*Id.* at ¶ 43.

{¶ 28} We find that Ra has not satisfied her reciprocal burden of setting forth evidence demonstrating a genuine issue of material fact that filing a sexual

harassment complaint was the determinative factor in Swagelok's decision to terminate her. Ra committed documented infractions against company policy and committed the last infraction while being on a corrective action plan for insubordination. We find that Ra has not met the elements of a prima facie case of retaliation. Therefore, Ra's second assignment of error is overruled.

{¶ 29} In Ra's third assignment of error, she contends that the trial court erred by determining that she did not meet her prima facie case for gender discrimination.

> To establish a prima facie case of * * * gender discrimination in an employment discharge action, a plaintiff must show that she (1) was a member of a statutorily protected class, (2) was discharged, (3) was qualified for the position, and (4) the position was filled by a person outside the protected class.

*Witzigreuter v. Cent. Hosp. Servs.*, 8th Dist. Cuyahoga No. 109192, 2020-Ohio-5088, ¶ 17, citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

{¶ 30} Ra argues that she observed two male coworkers on their cell phones while supervisors were present. She also argues that she never observed a supervisor telling male coworkers to stop using their cell phones while on the shop floor. Thus, Ra argues, the appellees treated male employees more favorably than her. However, also in her complaint, Ra states that she observed two females on their cell phones while on the shop floor, who never received a reprimand.

{¶ 31} Ra's arguments are misplaced because she fails to demonstrate that male employees were treated differently than the females employees. According to Ra, she observed male and female coworkers on their phones without a supervisor reprimanding them. Ra also has failed to demonstrate that her position was filled by a person outside of the protected class. Ra was not terminated for her cell phone usage, but rather violating a company policy while on a Level 3 AIP. Ra has failed to meet her prima facie case for gender discrimination. Therefore, Ra's third assignment of error is overruled.

{¶ 32} In Ra's fourth assignment of error, she argues that the trial court erred by determining that no genuine issue of material fact remained as to whether appellees' alleged reasons for disciplining and terminating Ra were a pretext for discrimination and/or retaliation. Ra correctly claims that if an employee establishes a prima facie claim of retaliation or discrimination, the burden shifts to the employer to articulate a legitimate nonretaliatory reason for the action. According to the *McDonnell Douglas* test, "the plaintiff must first establish a prima facie case of discrimination." *Wholf*, 2015-Ohio-171, 26 N.E.3d 902, ¶ 30, citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). "If the plaintiff makes a prima facie case, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision." *Id.*, citing *id.* at 802-803. "If the employer successfully meets this burden, then the burden shifts back to the plaintiff to show, by a

preponderance of the evidence, that the proffered reason was really a pretext for unlawful discrimination." *Id.*, citing *id.* at 804.

{¶ 33} However, Ra's arguments that the burden has shifted to the appellees fails because Ra did not establish a prima facie claim of retaliation or discrimination. As a result, the burden does not shift to the appellees. Therefore, Ra's fourth assignment of error is overruled.

{¶ 34} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
MARY EILEEN KILBANE, J., CONCUR