[Cite as *O'Malley v. Laborers' Internatl. Union of N. Am. Local 860*, 2024-Ohio-3103.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

HON. THOMAS F. O'MALLEY          :
IN HIS OFFICIAL CAPACITY
AS THE ADMINISTRATIVE JUDGE,     :

    Plaintiff-Appellee/Cross-     :
    Appellant,                                  No. 112989

v.                               :

LABORERS' INTERNATIONAL          :
UNION OF NORTH AMERICA
LOCAL 860,                       :

    Defendant-Appellant/          :
    Cross-Appellee.

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** August 15, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CV-20-940701 and CV-20-940702

---

### *Appearances:*

Weston Hurd, LLP and Max V. Rieker; and Roetzel &
Andress, LPA, R. Todd Hunt, and Alejandro V. Cortes, *for
appellee/cross-appellant*.

Mangano Law Offices Co., L.P.A., Joseph J. Guarino, III,
and Austin T. Opalich, *for appellant/cross-appellee*.

EMANUELLA D. GROVES, P.J.:

{¶ 1}    Defendant-appellant/cross-appellee, Laborers' International Union of North America, Local Union No. 860 ("Local 860"), appeals the trial court's order that found in favor of plaintiff-appellee/cross-appellant in part on cross-motions for summary judgment. Plaintiff-appellee/cross-appellant, the Honorable Thomas F. O'Malley, in his official capacity as the Administrative Judge of and on behalf of the Cuyahoga County Court of Common Pleas, Juvenile Division ("Appellee" or "Juvenile Court"), cross-appeals the same ruling, to the extent that it found in favor of Local 860. For the reasons that follow, we reverse the ruling of the trial court and remand for the court to order the parties to participate in arbitration.

**Factual and Procedural History**

{¶ 2}    The Juvenile Court has engaged in collective bargaining with its employees for several years. The most recent contracts were for the period between 2017 and 2019. The collective bargaining agreements ("CBAs") were for two sets of employees, employees who worked at the Detention Center ("Detention Center Employees") and employees who worked for the Juvenile Court in other capacities ("Court Services Employees"). Both contracts were largely the same, and each included an evergreen clause in the preamble, that provided

> The Court and the Union recognize that nothing in this Agreement supersedes or interferes with rights and authorities granted to the Court pursuant to Ohio Revised Code (ORC) Chapters 2151 et seq. And 2153 et seq. Nothing in this Agreement abrogates the Court's rights pursuant to ORC Chapter 4117 et seq. Notwithstanding, the Court agrees to recognize the Union and abide by the terms of the Agreement until such time as a successor agreement is negotiated between the

parties, the Union disclaims interest, or the employees elect to decertify the Union as their exclusive bargaining representative upon the expiration of this agreement.

(Emphasis in original.) Detention Center CBA/Court Services CBA, Preamble Section 3.

**{¶ 3}** The CBAs each also included the following duration clause:

This Agreement shall become effective January 1, 2017, and shall remain in full force and effect until December 31, 2019.

Detention Center CBA Article 38, Court Services CBA Article 37

**{¶ 4}** Before and after the expiration date of the CBAs, the parties attempted to negotiate new CBAs. They spent most of 2020 negotiating the contracts. While doing so, the parties continued to act as if the CBAs were in full force and effect. Nevertheless, on December 1, 2020, the Juvenile Court notified its employees that it no longer recognized Local 860. Simultaneously, the Juvenile Court filed two declaratory judgment actions, one for each CBA, which asked the trial court to make a declaratory judgment confirming that the CBAs were void ab initio for lack of consideration (Count 1); declaratory judgment confirming the expiration of the CBAs (Count 2); and declaratory judgment that the evergreen provisions of the CBAs were void ab initio as violative of Ohio public policy because they created a perpetual contract (Count 3). The trial court consolidated the cases since they requested the same relief.

**{¶ 5}** Local 860 filed an answer and counterclaim and subsequently an answer and amended counterclaim. The counterclaims included a breach-of-

contract claim (Count 1); a petition to compel arbitration for disputes that occurred during the contract term and disputes that occurred on and after January 1, 2020 (Counts 2 and 3); and declaratory judgment for a determination of the parties' rights under the respective CBAs (Count 4).

{¶ 6} Appellee filed a motion for judgment on the pleadings. Looking at the CBAs, the trial court found the CBAs ambiguous based on a review of the duration and evergreen clauses. As a result, the motion was denied because a ruling could not be made on the pleadings alone.

{¶ 7} The parties subsequently filed the first set of cross-motions for summary judgment. Appellee argued, in part, that the CBAs were expired and/or void ab initio; accordingly the actions to remove the union were allowed. The Union argued, in part, that the CBAs were valid and active; accordingly, Appellee was required to raise these issues through arbitration.

{¶ 8} The trial court found as follows:

The CBAs were valid contracts that were not void ab initio.

The CBAs expired on 12/31/2019 but were extended by the parties until one of the three conditions in the evergreen clause occurred.

The public policy of the state of Ohio limited the contract term of a CBA to three years, per R.C. Chapter 4117.

The CBAs lasted at most until 12/31/2020.

The court could not withdraw recognition of Local 860 until January 1, 2021.

Local 860 was entitled to a declaration that Appellee breached the CBAs but only from the period between 12/2/20 and 12/31/20.

{¶ 9} The trial court elected not to address the arbitrability of contract disputes that arose prior to the expiration of the contract. Further, the trial court found that Local 860's remaining counterclaims were not amenable to review on summary judgment but better addressed at trial.

{¶ 10} Rather than proceed to trial on the remaining issues, the parties submitted agreed stipulations of fact and filed a second round of cross-motions for summary judgment. The parties agreed that the two remaining issues for the court to decide were as follows:

> Does Local 860's December 4, 2020, e-mail to Court Administrator Tess Neff constitute a grievance under the CBAs and, if so, is it substantively arbitrable or moot given the Court's ruling on summary judgment [in its November 21, 2022 Journal Entry ("JE").] (Plaintiff reserves all procedural objections if this matter proceeds to an arbitration before an arbitrator.)?
>
> What is the remedy for the Juvenile Court's breach of contract [identified in the November 21, 2022 JE?].

March 31, 2023 Joint Stipulation of Fact.

{¶ 11} The trial court ultimately found that the December 4, 2020 email Local 860 sent to the Juvenile Court was "not effective as a grievance because considering the email to be a grievance would be to violate the public policy of the state that a contract between a public employer and its employees may not exceed three years in duration." July 18, 2023, JE. Two grievances raised during the contract period remained. Further, the trial court found that Local 860 was entitled

to damages in the amount of union dues they would have received in the month of December 2020 if the Juvenile Court had not withdrawn recognition.

{¶ 12} Each party appeals, assigning the following errors for our review.

## Local 860's Assigned Errors

### Assignment of Error No. 1

The trial court erred by refusing to compel arbitration concerning the interpretation and effect of Article 1, Section 3 of the CBAs in accordance with the Parties' valid and binding arbitration agreement.

### Assignment of Error No. 2

The trial court erred by refusing to compel arbitration of the December 4, 2020 Repudiation Grievance based upon the timing of potential arbitrable remedies instead of utilizing the Article 9, Section 1 contractual definition of "Grievance" and the Parties' past practice.

### Assignment of Error No. 3

The trial court erred by failing to order that, pursuant to Article 1, Section 3 of the CBAs, the CBAs required the Employer to abide by the CBAs unless or until one of the three contractual conditions precedent occurred.

### Assignment of Error No. 4

The trial court erred by limiting its finding that the Employer breached the CBAs to only the December 1, 2020 repudiation because the record established that the employer engaged in bad faith regressive bargaining and refused to participate in the Parties' negotiation impasse resolution procedure.

### Assignment of Error No. 5

The trial court erred in failing to order both equitable tolling and specific performance with the terms and conditions of the CBAs until completion of the agreed upon negotiation impasse resolution procedure.

## Appellee's Cross-Assignments of Error

### Cross-Assignment of Error No. 1

The trial court erred when it did not issue a final judgment in the Juvenile Court's favor based on the fact that a valid, enforceable, and unexpired contract did not exist and, therefore, the Juvenile Court does not have any legal obligation to recognize the Union or to comply with the CBAs.

### Cross-Assignment of Error No. 2

The trial court erred when it did not render final judgment in the Juvenile Court's favor based on the provisions of R.C. 4117.01(C)(8) because the elected judges of a Juvenile Court cannot, as a matter of law, enter into a contract that perpetually binds later elected judges of the Juvenile Court to recognize the Union and adhere to the CBAs.

### Cross-Assignment of Error No. 3

The trial court erred when it did not dismiss Local 860's counterclaims on the basis of the issues raised by the Juvenile Court in its Assignments of Error 1 and 2.

## Law and Analysis

### Standard of Review

{¶ 13} An appeal from a summary judgment is reviewed under the de novo standard of review. *Khalia Ra v. Swagelok Mfg. Co., L.L.C.*, 2021-Ohio-1657, ¶ 16 (8th Dist.), citing *Montgomery v. Greater Cleveland Regional Transit Auth.*, 2021-Ohio-1198, ¶ 18 (8th Dist.), citing *Grafton v. Ohio Edison Co.*, 1996-Ohio-336. Therefore, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment was appropriate. *Id.*

{¶ 14} Pursuant to Civ.R. 56(C), summary judgment is warranted when (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party

is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, the moving party is entitled to summary judgment. *Id.* at ¶ 17. "Once the moving party demonstrates entitlement to summary judgment, the burden shifts to the nonmoving party to produce evidence related to any issue on which the party bears the burden of production at trial. Civ.R. 56(E)." *Id.*, quoting *Mattress Matters, Inc. v. Trunzo*, 2016-Ohio-7723, ¶ 10 (8th Dist.).

## Waiver of the Arbitration Agreement and Invited Error

{¶ 15} Preliminarily, we note that appellee has challenged Local 860's calls for arbitration arguing Local 860 waived the right to arbitrate. In order to prevail on an argument that a party has waived their right to arbitrate, appellee needs to show "'(1) that the party knew of its right to assert an argument or defense and (2) that the totality of the circumstances establish that the party acted inconsistently with that right.'" *Blue Technologies Smart Sols, L.L.C. v. Ohio Collaborative Learning Solutions, Inc.*, 2020-Ohio-806, ¶ 13 quoting *Gembarski v. PartsSource, Inc.*, 2019-Ohio-3231, ¶ 25.

{¶ 16} Notably, Local 860 continuously argued that the appellee's challenges to the CBAs were issues that must be submitted to arbitration. It raised arbitration in the answer and counterclaim, and repeatedly throughout the pendency of the case in its motions. The parties stipulated that court-ordered arbitration was a possible outcome of the litigation as late as March 2023. Accordingly, the totality of the

circumstances establish that Local 860 acted consistently with its right to arbitrate the issues in this case. Furthermore, the parties' pleadings and the trial court's rulings did not reflect a waiver of that right. Therefore, appellee's claim of waiver is without merit.

{¶ 17} Appellee also argues if the trial court erred by refusing to compel arbitration, Local 860 invited the trial court's error because "[i]f the trial court was required to compel arbitration as Local 860 now argues, the record is clear that Local 860 never raised that issue with the trial court [in] its filings with the trial court." Appellee brief at p. 16. Under the invited-error doctrine, "a party will not be permitted to take advantage of an error that he himself invited or induced the trial court to make." *State ex rel. Beaver v. Konteh*, 83 Ohio St.3d 519, 521 (1998). "Invited error is a branch of the waiver doctrine that estops a party from seeking to profit from an error that the party invited or induced." *Koch v. Rist*, 89 Ohio St.3d 250, 256 (2000).

{¶ 18} In its motion for summary judgment, Local 860 requested that the trial court return the parties to the status quo, which equated to a return to negotiations until one of the terms of the evergreen clause was reached. Appellee argues that this request invited the trial court to ignore Local 860's calls to arbitrate. We disagree. Local 860 had already raised several grievances when the Juvenile Court filed suit. A return to the status quo would have returned the parties to negotiations and reactivated the pending grievances that the Juvenile Court claims it was no longer required to arbitrate. Furthermore, in the motion for summary

judgment, Local 860 asked the court to grant its petitions to compel arbitration and in the conclusion, Local 860 asked the court to order arbitration as an alternative to ordering the parties to return to negotiations.

{¶ 19} Finally, the trial court did not ignore Local 860's calls for arbitration. It found that the December 4, 2020 repudiation was not subject to arbitration because it would extend the contract term and refused to address other grievances finding: "Since this Court does not know if a public employer and a public employee collective bargaining agent can arbitrate issues that arose during the period that a contract was in effect, but after the contract has expired, this Court declines to decide that issue on a motion for summary judgment." "All other issues raised in the two counterclaims filed by Local 860 will be determined at trial . . . ." November 21, 2022, JE pp. 14, 22. By this ruling, the trial court refused to hear the remainder of Local 860's petition to compel arbitration until trial.

{¶ 20} Accordingly, we find that Local 860 did not invite error.

## Contracts with an Arbitration Agreement

{¶ 21} In both parties' first and second assignments of error, they challenge the trial court's ruling with respect to the CBAs' validity. Local 860 argues that the trial court correctly determined the CBAs were valid and enforceable and, as a result, the trial court should have ordered the parties into arbitration. Appellee in contrast argues that the trial court erred and should have found the CBAs expired and/or were void ab initio.

{¶ 22} A party seeking to enforce an arbitration provision may do so by either requesting a stay of the proceedings pending arbitration under R.C. 2711.02 or petitioning the court to order arbitration under R.C. 2711.03, or both. *Maestle v. Best Buy Co.*, 2003-Ohio-6465, ¶ 18. Under R.C. 2711.03, the trial court's role is to determine whether either party is challenging the making of the arbitration agreement or arguing that there was a failure to comply with the agreement.

{¶ 23} If the parties are not challenging these issues, the court is required to make an order directing the parties to proceed to arbitration. In contrast, if a party is challenging these issues, the court is required to proceed to trial to address the making of the arbitration agreement or the failure to comply with the agreement. R.C. 2711.03(A) ("The court shall hear the parties, and, upon being satisfied that the making of the agreement for arbitration or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the agreement."). "R.C. 2711.03 clearly provides that only when the making of the arbitration clause is itself at issue may the trial court proceed to try the action[.]" *Abm Farms v. Woods*, 81 Ohio St.3d 498, 501 (1998).

{¶ 24} The arbitration clause is considered on its own because it is, in essence, a contract within a contract subject to revocation on its own merits. *Taylor Bldg. Corp. of Am. v. Benfield*, 2008-Ohio-938 ¶ 41 citing *Abm Farms v. Woods*, 81 Ohio St.3d 498, 692 N.E.2d 574 (1998). Accordingly, an alleged failure of the contract itself does not affect the arbitration provision. *Id.*, citing *Abm Farms* at 502 ("Because the arbitration clause is a separate entity, it only follows that an

alleged failure of the contract in which it is contained does not affect the provision itself.").

{¶ 25} When a party challenges the contract but not the arbitration clause, they must establish that the arbitration clause itself was fraudulently induced, unconscionable, or otherwise revocable in order to avoid arbitration. *Id.* This principle is codified in R.C. 2711.03. The trial court does not reach the merits of the claims; it only proceeds to trial if the making of the arbitration agreement is challenged. *Abm Farms* at 501*;* R.C. 2711.03.

{¶ 26} Neither party here challenged the making of the arbitration agreement. The Juvenile Court argued that the CBAs were void ab initio because if Local 860's interpretation of the evergreen clause was valid, it had the effect of creating a perpetual contract, lacked mutuality of obligation, and sought to bind subsequent Juvenile Court judges to its terms. The Juvenile Court claimed that the trial court should have determined that the duration clause governs and the CBAs expired at the end of the stated term. The parties were disputing their interpretations of the evergreen and duration clauses, not the arbitration agreement. As such, the trial court should have confined its review to whether the dispute between the parties was arbitrable under the agreement. The trial court erred to the extent that it went beyond determining the arbitrability of the parties' dispute.

{¶ 27} Notably, it is well settled that Ohio law favors arbitration and that "[a] provision in any written contract. . . to settle by arbitration a controversy that

subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, . . . shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract." R.C. 2711.01(A).

{¶ 28} "An arbitration clause in a contract is generally viewed as an expression that the parties agreed to arbitrate disagreements within the scope of the arbitration clause and with limited exceptions, an arbitration clause is to be upheld just as any other provision in a contract should be respected." *Marks v. Morgan Stanley Dean Witter Commer. Fin. Servs.*, 2008-Ohio-1820, ¶ 15 (8th Dist.), citing *Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 668 (1998). Nevertheless, despite the strong policy in favor of arbitration, "'a party cannot be compelled to arbitrate a dispute which he has not agreed to submit [to arbitration].'" *Dorgham v. Woods Cove III*, 2018-Ohio-4876, ¶ 16, quoting *Teramar Corp. v. Rodier Corp.*, 40 Ohio App. 3d 39, 40 (8th Dist. 1987).

{¶ 29} When looking at the nature of the dispute and whether it falls within the terms of the arbitration clause, the court must first classify the clause as either broad or narrow. *Academy of Medicine v. Aetna Health, Inc.*, 2006-Ohio-657, ¶ 18. A broad arbitration clause "must be enforced unless it is clear that the clause 'is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *Id.* at ¶ 14, quoting *AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986), quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960).

{¶ 30} The arbitration agreement in this case provides:

> For the purposes of this Agreement, the term "grievance" is a dispute between the Court and Union . . . as to the interpretation or application of, or compliance with, an express provision of this Agreement.

Detention Center CBA and Court Services CBA Article 9, Section 1

{¶ 31} The CBAs then provide a two-step procedure that culminates in arbitration if the parties cannot resolve the dispute. Detention Center/Court Services CBAs Article 9, Section 2. An arbitration clause that contains the phrase "any claim or controversy arising out of or relating to the agreement" is considered the epitome of a broad clause. *Academy of Medicine v. Aetna Health, Inc.*, 2006-Ohio-657, ¶ 18. Courts have interpreted language assigning interpretation of the agreement to arbitration in a collective bargaining agreement as broad. *See USW v. Century Aluminum of Kentucky,* 157 Fed.Appx. 869, 872 (6th Cir. 2005) (finding that arbitration clauses in CBAs that include language assigning the interpretation of the agreement to arbitration are broad); *USW v. Commonwealth Aluminum Corp.*, 162 F.3d 447, 451 (6th Cir.1998) ("grievance procedure broadly encompasses matters involving the interpretation and application of all provisions of this Agreement'"); *USW v. Mead Corp., Fine Paper Div.*, 21 F.3d 128, 132 (6th Cir.1994) (finding arbitration clause that covers "grievances charging that the Company has violated this Agreement and involving the interpretation of, or compliance with, this Agreement" as broad).

{¶ 32} When determining whether the contract creates a duty to arbitrate, the trial court does not evaluate the potential merits of the underlying claims. *Aetna*

at ¶ 5. There is a presumption that a grievance is arbitrable unless it is expressly excluded or there exists "the most forceful evidence of a purpose to exclude the claim from arbitration." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-585 (1960).

{¶ 33} The parties' dispute here centers on the interpretation of the evergreen and duration clauses. The language of the CBAs explicitly assigns interpretation of the CBAs terms to the arbitrator. Accordingly, the parties' dispute was arbitrable and the trial court should have granted Local 860's petition for arbitration. Furthermore, the trial court erred when it attempted to interpret the CBAs language and determine the intent of the parties. Additionally, the trial court's judicially crafted public policy finding regarding the permitted lengths of CBAs went beyond the scope of its review.

{¶ 34} In addition to arguing that the CBAs were void ab initio, the Juvenile Court argued that the CBAs expired under their own terms. However, whether the CBAs had expired was also subject to arbitration. A dispute that is centered on whether the agreement to arbitrate has terminated or expired must be resolved by the arbitrator, not the court, "because resolution of the issue involves examining and interpreting the termination provision of the agreement." *Internatl. Assn. Bridge, Structural, & Ornamental Iron Workers v. J & N Steel & Erection Co.*, 8 Fed. Appx. 381, 386 (6th Cir. 2001). Whether the CBAs are expired depends on the interpretation of the evergreen and duration clauses, which we have already established are issues for arbitration.

> When a provision in a collective bargaining agreement is subject to more than one reasonable interpretation and the parties to the contract have agreed to submit their contract interpretation disputes to final and binding arbitration, the arbitrator's interpretation of the contract, and not the interpretation of a reviewing court, governs the rights of the parties thereto.

*Hillsboro v. Fop*, *Ohio Labor Council*, 52 Ohio St.3d 174, 177 (1990).

{¶ 35} Based on the foregoing, the parties' dispute regarding the expiration of the CBAs was arbitrable. Accordingly, the trial court erred as a matter of law when it addressed the substance of the parties' dispute and failed to grant Local 860's motion for summary judgment as to its petition for arbitration.

{¶ 36} Even if the CBAs had expired, the duty to arbitrate has post-expiration effect because if it did not, "'a party could avoid his contractual duty to arbitrate by simply waiting until the day after the contract expired to bring an action regarding a dispute that arose while the contract was in effect.'" *Huffman v. Hilltop Cos., LLC*, 747 F.3d 391, 395 (6th Cir.2014) quoting *Zucker v. After Six, Inc.*, 174 Fed. Appx. 944, 947-948 (6th Cir. 2006). "'[I]n the absence of any express provision excluding a particular grievance from arbitration . . . *only the most forceful evidence* of a purpose to exclude the claim from arbitration can prevail.'" *Id.* quoting *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986) (emphasis in original). Accordingly, the trial court should have granted Local 860's petition to arbitrate on this issue.

{¶ 37} Based on the foregoing, Local 860's first and second assignments of error are sustained, and their remaining assignments of error are rendered moot.

The Juvenile Court's first two cross-assignments of error are overruled, and the third is rendered moot by our finding on Local 860's assignments of error.

{¶ 38} Judgment reversed and remanded for the trial court to order the parties to arbitration.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, PRESIDING JUDGE

MARY JANE TRAPP, J.,* CONCURS;
SEAN C. GALLAGHER, J., DISSENTS (WITH SEPARATE OPINION)

(*Sitting by assignment: Judge Mary Jane Trapp of the Eleventh District Court of Appeals.)

SEAN C. GALLAGHER, J., DISSENTING:

{¶ 39} A contract cannot be simultaneously perpetual and subject to an express expiration date. It must be one or the other. This is the real conundrum we face in this case. Because this case was a declaratory judgment action, the conflict in the language between the Preamble Article 1 Section 3 language and the duration clauses in Article 37 and 38 of the respective contracts was subject to judicial determination. Therefore, I respectfully disagree with the majority's conclusion that

the trial court erred in failing to stay the proceedings and compel arbitration. The trial court judge was authorized, and required, to determine the rights of the parties. The majority decision kicks the can down the road by compelling arbitration, but an arbitration ruling that would, in effect, create a perpetual contract would violate R.C. 4117.05(B). The trial court was not required to compel arbitration because the interpretation of the Article 1 Section 3 Preamble language involved determining whether the issue was arbitrable, an issue solely within the purview of the trial court. I am constrained by the Ohio legislature's limitations on collective bargaining for court employees and Ohio's case law in contract interpretation in coming to this conclusion.

{¶ 40} This case is a paradox of sorts, asking the trial court to recognize the expiration of the agreement but to declare that the expiration nonetheless depends on the occurrence of conditions subsequent, not tied to any certain date. According to the union, this means that the trial court erred by not ordering the parties to arbitration.

{¶ 41} Cuyahoga County's juvenile justice system has been under strain for years. The challenges have at times been overwhelming and are well documented.[1]

---

[1] WOIO Channel 19 News Investigative Team, *Advocates say juvenile justice center is one of the most dangerous places in Cleveland*, June 7, 2022, https://www.cleveland19.com/2022/06/07/advocates-say-juvenile-justice-center-is-one-most-dangerous-places-cleveland/ (accessed Aug. 5, 2024); Daprile Lucas, Cleveland.com, *Ohio juvenile detention center is dangerously understaffed, court officials warn*, September 23, 2023, https://www.corrections1.com/juvenile-offenders/articles/ohio-juvenile-detention-center-is-dangerously-understaffed-court-officials-warn-7Q1Tx3my2uqT6ZvO/ (accessed Aug. 5, 2024).

In Cuyahoga County, crime rates involving juveniles have spiked. This increase has put court workers, both in and out of the juvenile detention center, under great duress. Likewise, judges have faced constant challenges dealing with the number of youths entering the system and the resulting strain on facilities and resources. Issues involving staffing levels, staff safety, and the safety of detained juveniles have been ongoing. The safety of court workers in the community is also a concern. Cuyahoga County is not alone facing these challenges. Other large communities in Ohio are seeing the same issues.[2]

{¶ 42} In response to these concerns, the staff at juvenile court sought continued collective representation through Local 860. Local 860 is a successor to SIEU Local 1199. Local 860 has been a highly effective labor union representing the heavy highway and utilities construction trades in Ohio's Cuyahoga, Lake, and Geauga counties since 1937. Laborers Local 860 also represents a number of employees in many public service jobs performed for local communities. The union has an excellent reputation and track record with both private and public organizations.

{¶ 43} The parties are not subject to statutory collective bargaining procedures that can be used as gap-filling measures when interpreting collective bargaining agreements. Their relationship is solely controlled by their agreements.

---

[2] Jatara Mc.Gee, WLWT Channel 5 Cincinnati, *An in-depth look at youth violence surging in Hamilton County*, October 4, 2022, https://www.wlwt.com/article/wlwt-investigates-an-in-depth-look-at-youth-violence-surging-in-hamilton-county/41322823 (accessed Aug. 5, 2024).

Neither of the collective bargaining agreements in this case, however, provide procedural details, which has in turn fueled this dispute. Although both parties recognized that R.C. Ch. 4117 does not govern their contractual rights, neither agreement incorporated timelines or procedures contained within R.C. Ch. 4117, which are typically used to guide the parties through disputes, especially as it pertains to negotiating successor contracts under R.C. 4117.14. Therein lies the problem.

{¶ 44} The parties reached an impasse early in their negotiations for the successor agreement, which took place before the expiration of the agreements at issue. At that time, the union attempted to invoke the alternative dispute resolution clause of each respective agreement, a separate process from the grievance procedure clause. Unlike R.C. 4117.14, which imposes strict timelines for seeking mediation and factfinding, the parties' agreement is silent. If permissive mediation is not agreed to, the "outstanding issues shall be submitted to fact-finding on an issue by issue basis." The union concedes that it demanded fact-finding, but that demand was voluntarily abandoned as negotiations continued. In December 2020, after the juvenile court repudiated any adherence to the expired agreements, the union attempted to pursue a grievance. Under the union's theory, the arbitration clause survived the expiration of the agreements, and as a result, whether the agreements existed was a question for arbitration.

{¶ 45} This dispute over the viability of the preamble language compared to the contract duration language did not arise during the term of the contract. It arose

when the juvenile court judges informed the staff that they no longer recognized Local 860, 11 months after the expiration of the collective bargaining agreements. However, as the Supreme Court has noted, "the parties' obligations under their arbitration clause survive[] contract termination [only if] the dispute was over an obligation arguably created by the expired agreement." *Nolde Bros. v. Bakery & Confectionery Workers Union*, 430 U.S. 243, 252 (1977).

{¶ 46} As later clarified, "*Nolde Brothers* [applies] only where a dispute has its real source in the contract. The object of an arbitration clause is to implement a contract, not to transcend it." *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 205 (1991). "A postexpiration grievance can be said to arise under the contract" in three situations: (1) "where it involves facts and occurrences that arose before expiration[; (2)] where an action taken after expiration infringes a right that accrued or vested under the agreement[;] or [(3)] where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement[,]" in other words, when the contract includes an express provision extending the agreement to arbitrate despite expiration of the contract. *Id.* at 205-206. This is because "an expired contract has by its own terms released all its parties from their respective contractual obligations, except obligations already fixed under the contract but as yet unsatisfied." *Id.* at 206. None of those situations are present in this case, and thus, the union cannot assert a right to arbitration.

{¶ 47} In this case, the issue between the parties was the failure to come to terms on a successor agreement and the juvenile court's declaration that the

agreements were expired and no longer effective. There were no obligations underlying the union's call for arbitration, arguable or otherwise, created by the expired agreement as of January 1, 2020. Their relationship was no longer controlled by contract. *See id.* at 207. For this reason, I cannot join the majority's conclusion that the question of "whether the CBAs had expired was also subject to arbitration." *Litton* provides that courts determine arbitrability of an issue, not the arbitrator. *See, e.g., Jillian Mechanical Corp. v. United Serv. Workers Union Local 355*, 882 F.Supp.2d 358, 366 (E.D.N.Y. 2012) ("[T]here no longer exists a presumption of the arbitrability of post-expiration grievances . . . .").

{¶ 48} On this point, the trial court incorrectly determined that the preamble extended the terms of the agreement for a year following termination. R.C. 4117.09(E) has no bearing on this case. That section provides that no collective bargaining agreement "shall contain an expiration date that is later than three years from the date of execution. The parties may extend any agreement, but the extensions do not affect the expiration date of the original agreement." *Id.* Thus, the legislature precluded parties from agreeing to a term exceeding three years, but nothing prevented those parties from including language to extend the original contract thereafter. Notwithstanding, R.C. 4117.09(E) is not meant to judicially insert yearly renewal clauses into an otherwise unambiguous termination date or in perpetual contracts, as the trial court did in this case.

{¶ 49} It is undisputed that both agreements at issue expressly provided for a two-year duration from the date of execution, wholly complying with

R.C. 4117.09(E) even if that section is applicable to the parties' relationship, and in addition, that the agreements expired by self-executing operation of the two-year duration to which the parties agreed. There is no contractual provision establishing any renewals of the contractual terms. In order to force arbitration, the union was required to demonstrate that the source of the contractual right underlying the grievance arose prior to the expiration of the agreements. This is because "[w]hether or not a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court, and a party cannot be forced to 'arbitrate the arbitrability question.'" *Id.* at 208, quoting *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 651 (1986). Thus, the question of whether arbitration is required was squarely before the trial court.

{¶ 50} In an attempt to enforce the arbitration provision under the grievance procedure, the union seeks to extend the effective dates of the agreements, citing the preamble, which provides the following:

> The Court and the Union recognize that nothing in this Agreement supersedes or interferes with rights and authorities granted to the Court pursuant to Ohio Revised Code (ORC) Chapters 2151 et seq. and 2153 et seq. Nothing in this Agreement abrogates the Court's rights pursuant to ORC Chapter 4117 et seq. Notwithstanding, the Court agrees to recognize the Union and abide by the terms of the Agreement until such time as a successor agreement is negotiated between the parties, the Union disclaims interest, or the employees elect to decertify the Union as their exclusive bargaining representative upon the expiration of this Agreement.

According to the union, the "[p]arties were bound by the CBAs until and unless the conditions precedent found in Article 1, Section 3 of the Preamble were fulfilled[,]"

irrespective of the express effective dates contained elsewhere in the agreements. Appellant Brief p. 27. Importantly, the union's right-to-arbitration argument is entirely based on the effectiveness of the agreements after January 1, 2020. The union's argument, however, would nullify the express two-year term contained in both agreements, reading that clause out of the agreements altogether. Contractual language is not read in such a fashion.

{¶ 51} Importantly, although the clause is referred to by the parties as an "evergreen clause," it is not one. Although the Juvenile Court agreed to "abide by the terms of this agreement" until the occurrence of one of three conditions subsequent, there is no stated time frame for that act as generally provided in an "evergreen clause." *See Cent. States, S.E. & S.W. Areas Pension Fund v. Transervice Logistics, Inc.*, 56 F.4th 516, 522 (7th Cir. 2022) (discussing the evergreen clause that expressly provided for a yearly renewal absent written notice to terminate).

{¶ 52} The disputed preamble language does not provide for an extension of the clear and unambiguous effective dates contained Article 38 of the Detention Center CBA, Article 37 of the Court Services CBA: "This Agreement shall become effective January 1, 2017, and shall remain in full force and effect until December 31, 2019." In the pertinent provision of the preamble, the parties agreed that "the Court agrees to recognize the Union and *abide by the terms of this agreement* until such time" as one of three happenings occurs. (Emphasis added.) *Id.* The preamble is nonetheless subservient to the effective dates established for the agreement as a whole and does not create a perpetually effective contract, nor does it act to create a

new term following the expiration of the original agreements. Accepting the union's argument would completely nullify the effective date clauses in both agreements or read language into the agreement not expressly included.

{¶ 53} Generally speaking, "[c]ourts disfavor perpetual contracts and 'an intention to create such a perpetuity must be clearly shown.'" *Westlake v. Cleveland*, 2017-Ohio-4064, ¶ 35 (8th Dist.), quoting *Hallock v. Kintzler*, 142 Ohio St. 287, 287 (1943). The union's request to create a perpetual contract for which the termination of the contract is solely dependent on the conditions subsequent and without regard to any set time frame would invalidate the clear and unambiguous clause establishing a two-year effective term for both agreements.

{¶ 54} The preamble simply provided that the juvenile court agreed to abide by the terms of the agreement until a successor agreement was effectuated, the union ceased operating, or the employees desired to decertify the union, all of which could occur during the effective dates of the agreements. In this case, the preamble does not specify that a perpetual contract shall exist following the expiration of the contractual term, nor does it expressly provide for any period of a renewal term following the expiration. "Contracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244 (1974), paragraph one of syllabus. It is undisputed that the union's agreements terminated, and were no longer effective, as of December 31, 2019, under the express terms of the agreements. No obligations between the parties could arise through those agreements thereafter, and therefore,

the arbitration requested to determine whether the contract survived the stated expiration dates of each respective agreement did not arise through obligations created by the expired agreements and before the agreements expired. The right to arbitration expired with the agreements. *Litton Fin. Printing Div.*, 501 U.S. at 206.

{¶ 55} The union's claim in this appeal is that the trial court erred by refusing to compel arbitration under Article 9 (the grievance procedure clause) of both agreements based on the juvenile court's demonstrated intent to declare the agreements terminated. Because both agreements expired by operation of their own stated duration, the union was unable to rely on the grievance procedures to settle their dispute. The parties' relationship was no longer controlled by the contractual terms following the expiration of the agreements.

{¶ 56} It appears the union abandoned its fact-finding inquiry during the contract term in the belief a new agreement would be reached. The judges closed that door after the contract ended. This effectively leaves the workers, both in and out of the detention center, without union protection. Although there is nothing to suggest the current judges will not strive to see that all employees are protected, they cannot be around to know and protect against all circumstances that will arise in such a volatile environment. Further, judges and their policies come and go, the detention center, court, and its services in the community will remain. It is rather ironic that the Cuyahoga County Library Board recently reached an agreement with Local 860 on representation for workers in an environment far less stressful and

dangerous than the juvenile court, but such is the apparent relationship between these parties.

{¶ 57} This case is emblematic of the above-referenced problems and represents a conflict that cries out for resolution. Yet, the ink spilled by an appellate panelist cannot make that happen; only the mutual agreement of the parties can achieve that result.

{¶ 58} For this reason, I would affirm in part and reverse in part the decision of the trial court. Because no contract existed, the juvenile court was entitled to a judgment on the counterclaims as a matter of law and to a declaration that the collective bargaining agreements terminated by operation of the contractual terms on December 31, 2019. As a result, I respectfully dissent. One would hope the parties can make it back to the negotiating table.